Michael J. Pérez, (Cal. State Bar No. 151039)
   Pro Hac Vice Application Pending
Christopher W. Rowlett, (Cal. State Bar No. 257357)
   Pro Hac Vice Application Pending
PEREZ VAUGHN & FEASBY Inc.
600 B Street, Suite 2100
San Diego, California 92101
Telephone: 619-784-3549
Facsimile: 619-460-0437
E-Mail: perez@pvflaw.com
      rowlett@pvflaw.com


José de Jesús Rivera, AZ SBN 004604
Miller, Pitt, Feldman & McAnally P.C.
2800 N. Central Avenue, Suite 840
Phoenix, Arizona 85004
Telephone: 602-266-5557
E-Mail: jrivera@mpfmlaw.com


Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF ARIZONA

| | |
|---|---|
| David Cohen,  an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>Arizona State University, Arizona Board of Regents, and Raymond Anderson, an individual.<br><br>    Defendants. | Case No.<br><br><br>**COMPLAINT**<br><br><br>JURY TRIAL DEMANDED |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PRELIMINARY STATEMENT**

1.  The Plaintiff, David Cohen, brings this action against defendants Arizona State University ("ASU"), Raymond Anderson ("Mr. Anderson") and the Arizona Board of Regents (collectively, the "Defendants"), for violations of Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e) and Arizona Civil Rights Act (ACRA) (A.R.S. §§ 41-1461 – 41-1468) for Defendants' failure to investigate and address multiple instances of assault and sexual harassment by a prominent ASU athletics booster, Bart Wear. Defendants retaliated against Mr. Cohen for his insistence that ASU address these systemic problems within the ASU athletics department, first stripping him of benefits and responsibilities, and ultimately terminating his employment in December 2019.

2.  From June 2014 to December 2019, David Cohen was the Senior Associate Athletic Director for Arizona State University. In that role, he was responsible for overseeing ticketing for all ASU athletics, and the day-to-day operations of the men's basketball and ASU swimming and diving programs. Mr. Cohen consistently received glowing reviews for his performance and the highest bonuses in the ASU athletics department.

3.  In March 2019, Bart Wear assaulted and sexually harassed Mrs. Kathy Cohen (Mr. Cohen's wife) at an ASU Men's Basketball game in Las Vegas, Nevada. During that same game, Mr. Wear inappropriately touched at least one other woman. This was consistent with Mr. Wear's pattern and practice of inappropriately touching, assaulting, and sexually harassing women at ASU functions. ASU's own investigation found that Mr. Wear sexually harassed at least three separate women on three separate occasions.

4.  Mr. Cohen reported Bart Wear's conduct to the Vice President for University Athletics, Raymond Anderson. Mr. Anderson did nothing. Five months later, after placing Mr. Cohen on administrative leave, stripping him of his duties, responsibilities, and certain benefits for reporting the assault and sexual harassment

of his wife and two other women in the ASU community, ASU finally investigated the allegations and determined it failed to properly respond to credible complaints of sexual harassment. Despite these clear failings, ASU terminated Mr. Cohen's employment on December 13, 2019.

5.     Mr. Cohen's termination was clear retaliation for reporting a prominent booster's sexual harassment and insisting ASU address the problem and protect its community members.

**JURISDICTION AND VENUE**

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Title VII. This court has supplemental jurisdiction over plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

7.     Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3), in that the unlawful employment practice was committed in this district, Defendants have their principal office in this district, and there is no other district that has substantial connection to the claim.

**ADMINISTRATIVE EXHAUSTION**

8.     On March 12, 2020, Mr. Cohen timely filed a charge of retaliation with the Equal Employment Opportunity Commission (EEOC). Through a work sharing agreement, the EEOC and Arizona Attorney General's Civil Rights Division also received a copy of Mr. Cohen's EEOC Charge, thereby satisfying the notice requirements of the ACRA.

9.     On or about May 4, 2021, the United States Department of Justice issued Mr. Cohen a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. Mr. Cohen fully complied with all prerequisites to jurisdiction in this Court under Title VII.

/ / /

/ / /

1

**PARTIES**

2       10.     David Cohen is a man who resides in Arizona. Plaintiff is a citizen of

3   Arizona.

4       11.     Mr. Cohen was an employee, as defined by Title VII, and the ACRA.

5   From June 2014 until he was terminated in December 2019 in retaliation for

6   reporting assault and sexual harassment by a prominent ASU athletics booster,

7   Mr. Cohen was employed as the Senior Associate Athletics Director for ASU.

8       12.     Defendant ASU is a public university which is part of the Arizona

9   University System, which is governed by the Arizona Board of Regents. ASU's

10  principal campus is located in Tempe, Arizona. It has campuses located throughout

11  Maricopa County, Arizona.

12      13.     Defendant the Arizona Board of Regents is a 12-member board created

13  under the Arizona Constitution as the governing body for the State of Arizona's

14  public university system, which includes ASU. The Arizona Board of Regents

15  principal place of business is located at 2020 N. Central Ave, Suite 230, Phoenix,

16  Arizona.

17      14.     Defendant Raymond Andreson is a man who resides in Arizona. Mr.

18  Anderson is a citizen of Arizona and was Mr. Cohen's supervisor and manager

19  while Mr. Cohen was employed by Defendant ASU.

20                  **FACTS COMMON TO ALL COUNTS**

21      15.     From June 2014 to December 2019, David Cohen was the

22  Senior Associate Athletic Director for Arizona State University. In that role, he was

23  responsible for overseeing ticketing for all ASU athletics, and the day-to-day

24  operations of the men's basketball and ASU swimming and diving programs.

25  Mr. Cohen consistently received glowing reviews for his performance and the

26  highest bonuses in the ASU athletics department.

27  / / /

28  / / /

4

Bart Wear, an Agent of ASU, Sexually Harasses Mrs. Cohen and Others

16.    On March 14, 2019, Bart Wear assaulted and sexually harassed Mrs. Kathy Cohen (Mr. Cohen's wife) at an ASU Men's Basketball game in Las Vegas, Nevada. During that same game, Mr. Wear inappropriately touched at least one other woman. This was consistent with Mr. Wear's pattern and practice of inappropriately touching, assaulting, and sexually harassing women at ASU functions. ASU's own investigation found that Mr. Wear sexually harassed at least three separate women on three separate occasions.

17.    At the time Bart Wear sexually harassed Mrs. Cohen and others, he was acting as an agent of ASU. As a prominent ASU donor, ASU granted Mr. Wear nearly unrestricted access to ASU athletics. This included, without limitation:

- Flying on ASU chartered flights;
- Discounted or free tickets to ASU athletics events;
- Exclusive access to ASU team practices;
- Special VIP access and travel to golf destinations with ASU Head Coach Herm Edwards and ASU Executive Leadership such as AD Ray Anderson and Deputy AD Jean Boyd; and,
- Entire trips (travel, meals, and hotels) to attend ASU athletics events in different states were paid for by the ASU athletics department on at least two occasions.

18.    During the PAC-12 NCAA Tournament, where he harassed Mrs. Cohen and others, Mr. Wear was a guest of ASU. ASU gave Mr. Wear seats only made available to ASU staff, family, and prominent donors. Those seats, directly behind the team bench, are not made available to the public for purchase. Only invited guests of ASU are authorized to sit in those seats.

Mr. Cohen Reports Bart Wear's Sexual Harassment and ASU Does Nothing

19.    On Monday, March 25, 2019, Mr. Cohen reported Mr. Wear's assault and sexual harassment to Mr. Anderson.  Mr. Cohen asked Scott Nelson to join the

meeting.  Mr. Cohen believed Mr. Nelson should be involved because the Sun Devil Club has a stated mission of "***promoting and protecting*** Arizona State through Sun Devil Athletics." (Emphasis added.)   While not an ASU employee, certainly Mr. Nelson would want to remain in the loop and investigate the inappropriate and unlawful conduct of a Sun Devil Club member.

20.     It was also important for Mr. Cohen that Mr. Nelson be at the March 25 meeting with Ray Anderson because Mr. Cohen and everyone associated with ASU athletics was acutely aware that Mr. Wear and Mr. Anderson shared a close relationship.  Mr. Wear supported Mr. Anderson throughout his tenure as Vice President of University Athletics and Mr. Anderson told Mr. Cohen to grant Mr. Wear great access to ASU athletics programs because he "writes checks."

21.     Mr. Anderson has acknowledged that on March 25 he learned Mr. Wear "inappropriately touched" Mrs. Cohen at the March 14 ASU basketball game.  Mr. Anderson directed Mr. Nelson to have a discussion with Rick Shangraw (CEO of ASU Enterprise Partners) regarding Bart Wear's conduct. Mr. Anderson also told Mr. Cohen that Mr. Wear's conduct was unacceptable, and he would address it immediately.  However, Mr. Anderson did not initiate an investigation at that time nor report the assault to any other department within ASU.

22.     At the time Mr. Anderson received the March 25 complaint, ASU was already aware that Mr. Wear inappropriately touched women when he consumed alcohol.  On a prior occasion, Mr. Wear had already been removed from at least one ASU basketball game for his belligerent conduct.[1]

| Jul 11 | | | | | | Mar 14  Mar 18  Mar 25 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug |
| | | | 2018 | | | | | | | 2019 | | | |

[1] In order to appreciate the timeline of events, this Complaint shall include references to the timing of Mr. Cohen's reports to ASU of Mr. Wear's assaults and sexual harassment.

1

23.     In early April 2019, Rick Shangraw learned of Mr. Wear's assaults and sexual harassment. Mr. Shangraw had a conversation with Mr. Anderson at that time and told Mr. Anderson that Mr. Wear's conduct was inappropriate and unacceptable. Mr. Anderson agreed but, inconceivably, Mr. Anderson still had not and did not initiate an investigation against Mr. Wear at that time nor report the assault and sexual harassment to any other department at ASU.

24.     In mid-April, Jay Heiler, a member of the Arizona Board of Regents, was informed of Mr. Wear's assault and sexual harassment. Mr. Heiler acknowledged that Mr. Wear's conduct was reprehensible. At that time, Mr. Heiler was also informed that Ray Anderson had been told of the incident and Anderson had failed to investigate or respond appropriately. This came as no surprise to Mr. Heiler. Mr. Heiler was aware of Bart Wear, knew his reputation for drinking and being inappropriate, and knew of Mr. Wear's close relationship with Mr. Anderson.  Mr. Heiler did not report Mr. Wear's assault and sexual harassment to the Arizona Board of Regents.

25.     On April 22, 2019, Jean Boyd (Deputy Athletics Director) was informed of Mr. Wear's assault and sexual harassment. Mr. Boyd acknowledged that he had a mandatory duty to report Mr. Wear's conduct.  Mr. Boyd did not report Mr. Wear's assault and sexual harassment, and ASU did not initiate an investigation in April 2019.

26.     On Friday, May 3, 2019, the ASU baseball team played a home game against UCLA.  ASU lost 2-3. Mr. Cohen sat with Mr. Anderson at the game. With the upcoming Devil's Ball, Mr. Cohen reminded Mr. Anderson of Mr. Wear's assault and sexual harassment, and voiced his concern that when Mr. Wear drinks, he is a danger to those around him.  Rather than address Mr. Wear's conduct or take any steps to protect people in the ASU community, including the athletes and other students in his department, Mr. Anderson told Mr. Cohen to stay away from the

event if he felt uncomfortable. No investigation was conducted into Mr. Wear's assault and sexual harassment in May 2019 and he was allowed to attend the Devil's Ball after ASU received multiple credible reports of assault and sexual harassment.

27.     On May 13, Mr. Anderson, Mr. Wear, Mr. Jean Boyd and ASU Head Football Coach Herm Edwards went on a golfing trip together to the San Francisco Bay Area using Mr. Wear's private jet service.  It had been more than six weeks since ASU received credible allegations of assault and sexual harassment against Mr. Wear, and rather than initiate an investigation, Mr. Anderson chose to go on a golfing trip with Bart Wear because he was a prominent university booster, using Mr. Wear's private jet service, and Mr. Anderson included ASU's Head Football Coach on the junket.

28.     On May 20, Mr. Cohen discussed with Mr. Boyd the allegations of assault and sexual harassment by Bart Wear which victimized Kathy Cohen, Leslie Hurley and Lindsey Wood. Mr. Boyd noted that Mr. Cohen "expressed anger" over Mr. Anderson's failure to report or investigate the assault and sexual harassment. Remarkably, Mr. Cohen's anger has been used against him in ASU's termination decision. In other words, ASU has chosen to characterize Mr. Cohen's anger as unreasonable instead of branding Mr. Wear's assaults and sexual harassment as reprehensible and urgent.

29.     The following day, May 21, as a result of his meeting with Mr. Cohen, Mr. Boyd confronted Mr. Anderson about his failure to initiate an investigation into Mr. Wear's assault and sexual harassment at the PAC-12 tournament more than two months prior.  Mr. Boyd allegedly told Mr. Anderson that he had a duty to "respond and report." Mr. Anderson confirms that Mr. Cohen reported the conduct, as Mr. Cohen was required to do, and agreed to initiate an investigation at that time.  Tragically, Mr. Anderson did nothing, and no investigation was conducted in May 2019.

30.     At this point, it had been over two months since Bart Wear assaulted and sexual harassed at least three women at ASU basketball games.  Mr. Wear's assaults and sexual harassment had been reported at least seven times to four different people within ASU, and a fifth person who was a member of Arizona's Board of Regents. ASU did not initiate an investigation into Bart Wear's assaults and sexual harassment in May 2019.

31.     On June 1, Mr. Wear left for vacation.  Inexplicably, Mr. Anderson said he could not report the assault and sexual harassment, or initiate an investigation until Mr. Wear returned from vacation.[2] As was the case throughout this ordeal, ASU showed more concern for the convenience and reputation of a prominent booster than the victims of assault and sexual harassment.  Mr. Anderson's duty to report is legally independent of his ability to warn Mr. Wear. Indeed, law enforcement and prosecutors alike will confirm that telling the accused predator in advance of any investigation is likely to lead to the destruction of evidence. Regardless, notwithstanding the numerous people who had reported the allegations, Mr. Anderson wanted to wait until Mr. Wear returned from vacation so as not to inconvenience the prominent donor.

32.     On Friday, June 7, 2019, Mr. Shangraw and Mr. Cohen again discussed Mr. Wear's assaults and sexual harassment.  Later in June, Mr. Shangraw met with Mr. Anderson again and Mr. Anderson again acknowledged that he received a credible report of assault and sexual harassment which occurred at an ASU basketball game in March.  Mr. Shangraw also confronted Mr. Anderson about his

---

[2] Throughout ASU's own investigation it remains clear that Mr. Anderson felt his primary duty was to protect Mr. Wear rather than protecting the victims and potential new victims at ASU.

golf trip with Mr. Wear and Coach Herm Edwards on Mr. Wear's private jet service and told Mr. Anderson the trip "was inappropriate."  Mr. Anderson said he would report Mr. Wear's conduct and "take care of it" when he returned from vacation "at the end of the summer."  Mr. Anderson apparently did not want his vacation to be impacted by what he viewed as a tedious and unnecessary assault and sexual harassment investigation.

33.    On June 19, Mr. Cohen again met with Mr. Boyd.  Mr. Boyd admits that he was reminded of the assault and sexual harassment by Bart Wear.  No investigation was initiated, nor report was made to anyone in June 2019.  Another month passed with ASU being more concerned about protecting a donor than the women in the ASU community.

34.    On July 5, Mr. Cohen again met with Mr. Anderson. He reminded Mr. Anderson of Mr. Wear's assaults and sexual harassment in March.  Mr. Cohen details the assault on his wife, Mrs. Kathy Cohen, at that time . . . again.

35.    On July 24, Mr. Cohen again met with Mr. Anderson and reminded him of Mr. Wear's assaults and sexual harassment in March.  Mr. Anderson admits the meeting occurred and admits that he was reminded in July that "Mr. Wear inappropriately touched Mrs. Cohen." Still, no investigation was initiated in July 2019.



ASU Places Mr. Cohen on Administrative Leave and Begins an Investigation

36.    On August 15, Mr. Cohen was placed on administrative leave. The following week, ASU received a letter from Mr. Cohen's counsel detailing the multiple reports of assault and sexual harassment and clear retaliation against Mr. Cohen.  Only after initiating an adverse employment action against Mr. Cohen

1    and then receiving an August letter from the Cohens' attorneys did ASU begin
2    investigating Mr. Wear's assaults and sexual harassment.

3         37.    During the investigation, in September 2019, Mr. Wear flew to
4    Michigan for the football game against Michigan State University. This trip was a
5    "perk" for ASU donors based on a person's contribution level.  The trip is organized
6    by the Sun Devil Club, and the entire trip is orchestrated to cater to those donors
7    (e.g., the plane ride, the hotel accommodations, the game tickets, etc.). By that time
8    in September, ASU had received more than ten (10) credible reports of Mr. Wear's
9    assaults and sexual harassment six months prior and was allegedly investigating
10   Mr. Wear's conduct of assaults and sexual harassment of three women. Nonetheless,
11   Mr. Wear continued to enjoy the benefits of being a prominent ASU donor,
12   including unfettered access to ASU events, personnel and ASU's facilities.

13
14
15



16

17        39.    Moreover, several ASU athletics department employees were
18   interviewed for the investigation. Each of those employees report directly to
19   Mr. Anderson. Mr. Anderson controls whether those employees receive any
20   discretionary bonuses and the amount of those bonuses. These employees were
21   interviewed and asked to provide evidence about Mr. Anderson's response to Bart
22   Wear's sexual harassment, all while Mr. Anderson controlled the terms and
23   conditions of their employment and their compensation.

24        40.    Mr. Anderson received a $100,000 discretionary bonus in 2020.

25        41.    For all practical purposes, ASU had concluded its investigation into the
26   allegations against Bart Wear on or about November 15, 2019.  The ASU report
27   determined that on three separate occasions, against three separate women:
28   1) "There is sufficient evidence to conclude that Kathy Cohen was sexually harassed

by Mr. Wear based on the credibility of the witnesses and the weight of the evidence."; 2) "There is sufficient evidence to conclude that Leslie Hurley was sexually harassed by Mr. Wear based on the credibility of the witnesses and the weight of the evidence."; and, 3) "There is sufficient evidence to conclude that Lindsey Wood was sexually harassed by Mr. Wear based on the credibility of the witnesses and the weight of the evidence." Albeit extremely untimely, ASU's own factual determination was decisive. However, notwithstanding this clear finding, on December 7, 2019 (weeks after ASU's conclusion was reported), Bart Wear was given courtside, V.I.P. seats to the ASU v. Louisiana basketball game by ASU! In other words, even though ASU knew of Bart Wear's assaults and sexual harassment, ASU continued to prioritize its relationship with a prominent donor over the safety of its students and faculty member. Notwithstanding all the evidence in its possession, the privileges afforded to prominent university donors continued to flow to Bart Wear.

<u>ASU Violates Its Own Policies</u>

42.     ASU completely disregarded its own policies and failed to investigate the many credible reports of Bart Wear's assaults and sexual harassment it received. Academic Affairs Manual (ACD) 401 is an ASU policy titled, "Prohibition Against Discrimination, Harassment, and Retaliation."  According to ACD 401, ASU "is committed to providing an environment free of discrimination, harassment, or retaliation for the entire university community, including all students, faculty members, staff employees, and guests.  ASU expressly prohibits discrimination, harassment, and retaliation by employees, students, contractors, or agents of the university based on any protected status: race, color, religion, sex…."  Under the "Required Reporting" section of ACD 401, it states: "Unless a person is restricted by law from doing so, any employee who is informed of or has a reasonable basis to believe that sexual harassment has occurred, shall immediately report all information regarding the occurrence(s) to the Office of University Rights and

Responsibility or the Title IX Coordinator or the Dean of Students office."  "Failure to report and/or inaction may be cause for disciplinary action." As described above, ASU received several credible threats of assaults and sexual harassment by Bart Wear.  ASU's abject failure to investigate these reports is a clear violation of its own policy.

43.    ASU's conduct also violated President Crow's stated position on the matter.  According to President Crow, ASU supposedly had "zero tolerance" for inappropriate sexual behavior. Indeed, in an interview with the Arizona Republic, President Crow stated:

> Here [at ASU] it's this notion we build into our culture of maximum diligence for the safety of our athletes," Crow said. "It's zero tolerance. You can't always prevent something from happening, but you can take immediate action the second you hear about it. My reaction to the facts of the Penn State case going all the way back to the incident that was reported by the assistant coach (Mike McQueary) to the head coach (Joe Paterno) to the athletic director (Tim Curley) was that the assistant coach and the head coach were remiss in their duty. I would have fired both of them, I don't care who they are. And if I got fired after that, they'd still be fired. . . .  If we heard from someone complaints of physical abuse, sexual abuse, inappropriate conduct, the first thing we would do is investigate," Crow said. "If it turns out these things were true, all those people would be turned over to the police or fired."

44.    Rather than follow its own policies and statements from its President, ASU's primary concern was to protect a donor. Even now, the only person who has been disciplined or fired in the ASU "family" is the man who repeatedly reported the assaults and sexual harassment.  There have been no consequences for the men who chose to do absolutely nothing in response to the credible allegations of a potential predator on campus.

<u>ASU Retaliates Against Mr. Cohen</u>

45.    Mr. Cohen was a model employee.  Under his watch, ASU ticket sales increased and the Men's Basketball Team became an NCAA Tournament regular.

Everything at work was fine until he reported Mr. Wear's assault and sexual harassment of his wife and two other women, then had the audacity to demand ASU do something about it. For repeatedly raising ASU's failure to investigate and address Bart Wear's conduct, Mr. Cohen was labeled "not a team player," his bonus structure was changed, his responsibilities were reassigned, he was demoted, and ultimately fired. The facts of the retaliation cannot be more clear.

46.   On July 11, 2018, Mr. Cohen received a tremendous review from Mr. Anderson, confirming Mr. Cohen's "Strong and significant overall performance." Beginning in March 2019 (eight months later), Mr. Cohen repeatedly reported Bart Wear's assaults and sexual harassment on Mrs. Cohen and two other women at ASU basketball games.

47.   On June 13, 2019, Mr. Cohen had his annual performance review. Mr. Boyd and Frank Ferrara (Senior Associate Athletic Director, Chief Financial Officer) were also present in this review.  The review was generally positive.  In fact, Mr. Cohen's reviews have always been positive, and he has received the highest bonuses in his department for four straight years at ASU, including the Spring of 2019. This evidences ASU's true satisfaction with Mr. Cohen's employment.

48.   During his annual review, Mr. Cohen was informed that he would no longer be an administrator for the ASU swimming program.  Immediately prior to this review, Mr. Cohen's responsibilities included overseeing all ticketing for ASU athletics, and he was the primary administrator responsible for the men's basketball and swimming programs.  The stated reason for this change was to allow Mr. Cohen to focus more on ticketing.  At the time, however, revenue from ticketing across all sports was up, and the football team played to 91% capacity despite being mired in four straight six-loss seasons during a four-year stadium renovation.  This reason was clear pretext for ASU's first retaliatory adverse employment action against Mr. Cohen.

49.     After the performance review and after Mr. Cohen had received his bonus, Mr. Cohen exchanged text messages with Mr. Anderson, thanking him for the bonus. Thereafter, Mr. Anderson referenced "changes" being made to the athletic department.   Mr. Cohen asked Mr. Ferrara about those "changes" and whether Mr. Cohen would report to Mr. Ferrara.  Mr. Ferrara said that if Mr. Cohen reported to him, he would fire him the next day.

50.     On June 19, 2019, Mr. Cohen was called into a meeting with Mr. Anderson, Mr. Boyd and Mr. Ferrara.  At that meeting, Mr. Anderson informed Mr. Cohen his new bonus structure would be completely at Mr. Anderson's discretion.  He was told that he could either agree to this change or start looking for a new job. Mr. Cohen signed the new bonus plan which represented a significant change in Mr. Cohen's compensation structure.  With this change, Mr. Cohen no longer had any guaranteed bonus pool, and nearly 40% of his overall compensation was completely at Mr. Anderson's discretion.

51.     On Monday, August 12, 2019, Mr. Cohen was called into a meeting with Mr. Anderson and Mr. Ferrara.   At this meeting, Mr. Anderson informed Mr. Cohen that he would now be reporting to Mr. Ferrara instead of Mr. Anderson. Mr. Cohen told Mr. Anderson that he viewed this, along with the change in bonus structure and stripping of responsibilities for the swimming program, as retaliation for reporting Mr. Wear's inappropriate and unlawful conduct.

52.     When challenged, Mr. Anderson lied.  He said Mr. Cohen didn't say anything about the physical assault and sexual misconduct of Bart Wear until three months after the basketball season ended.  Mr. Cohen reminded Mr. Anderson that he first reported the conduct the Monday after the season concluded on March 25, 2019, and Mr. Nelson was in the room when the initial complaint was made. Mr. Anderson then asked Mr. Cohen why he didn't "do anything" about the complaint and Mr. Cohen reminded Mr. Anderson that he reported the complaint to the head of the athletic department (i.e., Mr. Anderson) who asked Mr. Cohen to let

him handle it.  He then said that neither Mr. Cohen nor Mr. Shangraw was going to tell him how or when to "talk to a fucking donor."

53.    Mr. Cohen next met with Amy Schramm (Senior Associate Athletics Director, Human Resources) to discuss his complaint and ASU's retaliation. This was the first time Ms. Schramm, the head of human resources for the athletic department, heard about Mr. Wear's inappropriate and unlawful conduct.  She told Mr. Cohen to meet with Kevin Salcido (Vice President of Human Resources and Chief HR Officer).   Mr. Cohen met with Mr. Salcido on August 12, 2019 at 2:00 p.m. in Mr. Salcido's office. Mr. Salcido acknowledged that it sounded like Mr. Cohen was being retaliated against for reporting Mr. Wear's conduct and demanding Mr. Anderson investigate and address the issue.

54.    Next, Mr. Cohen met with James Rund (Senior Vice President of Education Outreach and Student Services) on Monday, August 12 and Mr. Shangraw on Tuesday, August 13.  Both Mr. Rund and Mr. Shangraw acknowledged the obvious retaliation and asked if Mr. Cohen's relationship with Mr. Anderson was irreparable.  Mr. Cohen told both of them he wanted to keep his job and find a way to move forward with ASU.

55.    Two days later, on August 15, 2019, Mr. Anderson attempted to terminate Mr. Cohen's employment effective immediately.  Mr. Anderson told Mr. Cohen he wasn't a "team player" or "cultural fit." Clearly, this was a reference to Mr. Cohen's insistence that ASU investigate and address Mr. Wear's inappropriate and unlawful conduct. Mr. Cohen was later told he was not terminated but rather placed on paid administrative leave.  On December 12, 2019, Mr. Cohen received a letter from Ray Anderson informing him that his employment with ASU was terminated effective December 13, 2019.

/ / /

/ / /

/ / /

56.     On the morning of his termination, Mr. Cohen spoke with Becky Parke (Sr. Associate Athletic Director, Marketing) about his complaint and subsequent retaliation. Ms. Park said, "This is why women don't come forward – nothing ever happens." With its mishandling of the allegations against Bart Wear and subsequent retaliation against Mr. Cohen, ASU shows it learned nothing from the "Me Too" movement.  It does not believe women and would rather protect its own monetary self-interest and avoid confronting a donor than root out people who use their positions of power, influence and access to demean and degrade women.

57.     Thereafter, Mr. Anderson, acting in his role as Vice President of University Athletics, contacted people in the sports community bragging about his role in terminating Mr. Cohen and claiming the reason for the termination was that Mr. Cohen was a bad employee.  Multiple sources will confirm Mr. Anderson's braggadocious remarks relating to private personnel decisions involving Mr. Cohen's termination which were made to third parties outside of ASU. Further investigation will likely uncover additional conversations in which Mr. Cohen's reputation was maligned by the entity who retaliated against him for reporting the inappropriate conduct of a significant athletics booster.  Mr. Anderson's conduct makes it very difficult if not impossible for Mr. Cohen to find substitute employment in his chosen field.  This legal action is the only recourse available to Mr. Cohen.

58.     In addition to violating state and federal whistleblower protection laws, ASU's decision to terminate Mr. Cohen violates its own policy for the "Protection of Employees from Reprisal for Whistleblowing" (Policy No. 6-914).  The purpose of the policy is "to prohibit supervisory personnel from taking adverse personnel action against an employee … as a result of the employee's good faith disclosure of alleged wrongful conduct to a public body. … An employee who discloses and subsequently suffers an adverse personnel action as a result is subject to the protection of this Policy."

59.     As a direct and proximate result of ASU's conduct, the Cohens suffered and continue to suffer serious and permanent harm including but not limited to lost past and future wages, diminution of earning capacity, pain and suffering, and emotional harm.

### FIRST CAUSE OF ACTION

**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**

**(Against All Defendants)**

60.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as if set forth fully herein.

61.     Between March and August of 2019, Mr. Cohen engaged in protected activity by complaining to Mr. Anderson and others in the ASU community about Mr. Wear's sexual harassment of members of the ASU community. As alleged above, Mr. Cohen demanded on multiple occasions that ASU investigate Mr. Wear's conduct and take appropriate steps to protect members of the ASU community, including Mrs. Cohen.

62.     Less than six months after Mr. Cohen complained of Mr. Wear's sexual harassment, Defendants placed Mr. Cohen on administrative leave and subsequently terminated his employment. In 2019, just prior to being placed on administrative leave, Cohen received the largest discretionary bonus in the ASU athletics department, confirming that his job performance was not the reason for his termination.

63.     Defendants' alleged reason for terminating Mr. Cohen's employment is pretextual and baseless. Defendants fired Mr. Cohen because he complained of a prominent booster's pattern of sexual harassment and demanded Defendants address the situation.

64.     Mr. Cohen suffered damages as a result of Defendants' unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

65.     Defendants intentionally violated Mr. Cohen's rights under Title VII, with malice or reckless indifference, and, as a result, are liable for punitive damages.

## SECOND CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy

### (Against All Defendants)

66.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as if set forth fully herein.

67.     The Arizona Employment Protection Act (ARS § 23-1501(A)(3)(c)) prohibits retaliatory employment termination for, among other things, an employee's refusal to commit an act or omission that would violate Arizona Constitution or an Arizona statute, and disclosure that the employee has information or reasonably believes that the employer or an employee of the employer violated or will violate a state statute or the Arizona Constitution.

68.     The Arizona Civil Rights Act (ARS §§ 41-1461 – 41-1468) prohibits discrimination and harassment based on, *inter alia*, sex.

69.     Arizona State University is an employer within the meaning of the ACRA. A.R.S. § 41-1465(6)(a).

70.     Mr. Cohen was an employee of Arizona State University.

71.     As discussed above, Mr. Cohen reported sexual harassment, including unwanted inappropriate touching, by Mr. Wear to Defendants. Defendants failed and refused to promptly investigate or take any corrective action to address Mr. Wear's sexual harassment. Moreover, Defendants placed Mr. Cohen on administrative leave, changed the terms and conditions of his employment, stripped him of benefits, and ultimately terminated him in violation of the ACRA.

72.     As a direct and proximate result of Defendants' wrongful termination, Mr. Cohen has been damaged in an amount to be proven at trial.

73.     Punitive damages should also be awarded due to the willful and malicious actions conducted by Defendants.

19

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Cohen prays for judgment against Defendants, and each of them, as follows:

1.  A declaration that Defendants violated Mr. Cohen's rights under applicable state and federal law;

2.  An award of damages against Defendants, jointly and severally, for the violations alleged herein, including without limitation, past and future wages and benefits, pre and post-judgment interest, compensatory damages, and mental anguish and emotional distress damages in an amount to be proven at trial;

3.  An award of exemplary or punitive damages in an amount to be proven at trial due to Defendants' wrongful acts;

4.  An award of costs and attorneys' fees incurred in bringing this action; and,

5.  For such other and further monetary and/or injunctive relief as the Court deems just and proper.

DATED: July 7, 2021          PEREZ VAUGHN & FEASBY INC.


By: _/s/ Michael J. Perez_____
Michael J. Perez
Attorneys for Plaintiff