Michael J. Pérez (California SBN 151039)
Admitted *Pro Hac Vice*
Jeffrey A. Feasby (California SBN 208759)
Admitted *Pro Hac Vice*
Evan C. Flores (California SBN 325006)
Admitted *Pro Hac Vice*
PEREZ VAUGHN & FEASBY Inc.
600 B Street, Suite 2100
San Diego, California 92101
Telephone: 619.784.3549
Facsimile: 619.460.0437
E-Mail: perez@pvflaw.com

José de Jesús Rivera (AZ SBN 004604)
Miller, Pitt, Feldman & McAnally P.C.
2800 N. Central Avenue
Phoenix, Arizona 85004
Telephone: 602.266.5557
E-Mail: jrivera@mpfmlaw.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA**

David Cohen, an individual,

Plaintiff,

v.

Arizona Board of Regents, and Raymond Anderson, an individual.

Defendants.

Case No. 2:21-CV-01178-GMS

**PLAINTIFF'S MOTION IN LIMINE NO. 2 OF 5 TO EXCLUDE TESTIMONY AND REPORTS FROM THE SANDY HATFIELD CLUBB; DECLARATION OF MICHAEL J. PEREZ**

Plaintiff David Cohen ("Plaintiff") hereby moves the Court for an order *in limine* as follows:

Defendant is prohibited from referencing or introducing any testimony or other evidence related to the culture assessment prepared by Sandy Hatfield Clubb for the Sun Devil Athletics Senior Management Team in 2018, including but not limited to the report that was prepared by Sandy Hatfield Clubb.

## I. RELEVANT FACTS

In early 2018, the Arizona Board of Regents retained Sandy Hatfield Clubb ("Clubb") of the PICTOR Group to conduct a "culture assessment" for the Sun Devil Athletics Senior Management Team and provide executive coaching. Clubb's engagement was for the limited purpose of evaluating and providing feedback on the department's leadership. This process including conducting individual interviews with team members, observing team meetings, and reviewing individual "Position Questionnaires" completed by team members.

Clubb's report[1] and related materials are comprised of (1) Clubb's handwritten interview notes, (2) various questionnaires completed by members of the team, (3) summaries of interviews and questionnaires, and (4) recommendations as to how best "improve the performance of the team." Notably, Clubb was ***not*** designated as an expert.

## II. THE CLUBB REPORT IS INADMISSIBLE HEARSAY

Both Clubb's report itself and its contents are inadmissible hearsay. *See* Fed. R. Evid. 802, 805. The report was prepared out-of-court and Defendant seeks to introduce the report to present the opinions and hearsay statements contained within. There was neither an oath administered nor any duty of accuracy for the witnesses' nonroutine interviews, precluding any hearsay exceptions and creating the very lack of credibility that hearsay laws are designed to prevent. *See*, *e.g.*, *Clark*, 650 F.2d at 1037 (holding hearsay statements in business records only if declarant "was acting routinely" and "under a duty of accuracy").

///

[1] A copy of Clubb's report is attached to the Pérez Decl. below as Exhibit 2.

The interview notes, questionnaires, and summaries, which Defendant seeks to introduce to prove the employees' statements, are hearsay, as the employees were informally interviewed outside of court with no duty to tell the truth. *See United States v. Johnson*, 594 F.2d 1253, 1256 (9th Cir. 1979) (holding admissibility of summaries require admissibility of the underlying materials). Clubb had no personal knowledge of the facts in the summaries, and all the questionnaires and interviews were completed by the ASU employees.

## III. THE CLUBB REPORT IS INADMISSIBLE OPINION TESTIMONY

Clubb also presents opinions and recommendations that are governed by opinion admissibility rules. *See Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007) (summary that included author's opinion was subject to the rules governing opinion testimony).

Clubb has extensive experience in evaluating athletic departments, and is the president of The PICTOR Group, a niche but highly specialized consulting firm. Pérez Decl., Ex. 1 (Clubb Depo.) at 7:8-8:14, 9:18-10:2. Clubb was hired because of her claimed expertise and methodologies. Id. (Clubb Depo.) at 9:4-10:2. Here, Clubb's report and related testimony constitute expert testimony and opinions. Her opinions, recommendations, and conclusions, including Plaintiff's effect on the team environment and evaluating his "qualities" as an employee, were all based on her technical and specialized knowledge. Any such testimony is subject to Rule 702. *See* Advisory Committee Notes to Fed. R. Evid. 701 (Rule 701(c) ensures Rule 702 will neither "be evaded through the simple expedient of proffering an expert in lay witness clothing" nor "evade the expert witness disclosure requirements set forth in [Rule 26].) Given Defendant's decision not to designate Clubb as an expert witness, she is precluded from presenting expert testimony in the form of the report or otherwise. Fed. R. Evid. 701(c).

### A. Alternatively, Clubb's Report is Inadmissible Lay Opinion

Assuming *arguendo* that Clubb's conclusions and recommendations are not expert opinion testimony, Defendant is still precluded from admitting this evidence. Lay opinion testimony cannot rely on inadmissible hearsay evidence to formulate their opinions.

*United States v. Lloyd*, 807 F.3d 1128, 1154 (9th Cir. 2015) (lay opinion witness may not "rely on hearsay"). Clubb's report is entirely based on hearsay statements.

## IV. ANY MARGINAL RELEVANCE IS SUBSTANTIALLY OUTWEIGHED BY THE RISK OF PREJUDICE, CONFUSION, AND DELAY

Clubb's report has limited relevance, at best, and is accordingly inadmissible under Rule 403 of the Federal Rules of Evidence. Rule 403 protects the integrity of the jury trial by allowing courts to exclude relevant evidence where its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or misleading the jury. *See, e.g., Coursen v. A.H. Robins Co., Inc.,* 764 F.2d 1329, 1334 (9th Cir. 1985).

The Court should not allow Defendant to highlight stale consultant reports, which would invite the jury to judge Cohen based on whether he was well-liked by his coworkers in early 2018,[2] rather than making the critical factual determination of whether he was retaliated against by Defendant for reporting harassment in the latter half of 2019.[3] The clear purpose of Clubb's report was to optimize team performance through individual coaching, meetings, and anonymized assessments—most of which were kept confidential and never intended to be revealed to other team members. However, when taken out of context, jurors may be misled to conclude that Cohen was a "problem employee" and therefore deserved termination. Introducing these collateral materials would sidetrack the jury by forcing them to parse evidence from years prior, potentially conflating those events with the retaliatory conduct at issue. This type of confusion is precisely the type of prejudice Rule 403 is meant to prevent.

///

///

[2] For example, one statement Defendant wants to introduce is whether or not Plaintiff should be in their "foxhole." This is subjective, unhelpful and prejudicial hearsay.

[3] Notably, there are no employment records or evaluations that suggest Clubb's report was relevant to Plaintiff's work performance. In fact, Plaintiff received a substantial bonus shortly after the report was issued.

## V. CONCLUSION

For the reasons stated above, the Court should grant Plaintiff's motion and exclude any and all evidence, testimony, or references to reports and assessments from Sandy Hatfield Clubb.

DATED: November 7, 2025 PEREZ VAUGHN & FEASBY INC.

By: ______________________________

Michael J. Pérez
Attorneys for Plaintiff

**CERTIFICATION OF COUNSEL**

Pursuant to LRCiv 7.2(1), the undersigned counsel certifies that the parties have met and conferred in good faith in an effort to resolve the disputed evidentiary issues that are the subject of this motion.

DATED: November 7, 2025 PEREZ VAUGHN & FEASBY INC.

By: ______________________________
Michael J. Pérez
Attorneys for Plaintiff

**DECLARATION OF MICHAEL J. PEREZ**

I, Michael J. Pérez, hereby declare,

1. I am an attorney duly licensed to practice law in the State of California and admitted *pro hac vice* for this matter. I am a partner at the law firm of Pérez Vaughn & Feasby Inc., attorneys for plaintiff David Cohen ("Plaintiff") in the above-captioned action. I have personal knowledge of the facts set forth in this declaration and, if called upon to testify, I could and would testify competently thereto.

2. On December 7, 2023, Plaintiff took the deposition of Sandy Hatfield Clubb. A true and correct copy of the relevant excerpts from Ms. Clubb's deposition transcript are attached herein as Exhibit 1.

3. Attached herein as Exhibit 2 is a true and correct copy of Sandy Hatfield Clubb's report.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 7th day of November, 2025, in San Diego, California.

Michael J. Pérez

# Exhibit 1

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

David Cohen,

Plaintiff,

v.

Arizona Board of Regents; and Raymond Anderson, an individual,

Defendants.

Case No. 2:21-cv-01178-PHX-GMS

DEPOSITION OF SANDY HATFIELD CLUBB

Scottsdale, Arizona

April 2, 2024

Prepared by:

Meri Coash, RMR, CRR
Certified Reporter
Certification No. 50327

CERTIFIED TRANSCRIPT

DEPOSITION OF SANDY HATFIELD CLUBB

was taken on April 2, 2024, commencing at 10:58 a.m. at the law offices of Papetti Samuels Weiss McKirgan LLP, 16430 North Scottsdale Road, Suite 290, Scottsdale, Arizona, before Meri Coash, a Certified Reporter in the State of Arizona.

* * *

APPEARANCES:

For the Plaintiff:
PÉREZ VAUGHN & FEASBY, INC.
By: Christopher W. Rowlett, Esq.
(via videoconference)
600 B Street
Suite 2100
San Diego, California 92101
619-784-3550
rowlett@pvflaw.com

For the Defendants:
PAPETTI SAMUELS WEISS McKIRGAN LLP
By: Heather A. Robles, Esq.
Robert H. McKirgan, Esq.
16430 North Scottsdale Road
Suite 290
Scottsdale, Arizona 85254
480-800-3535
hrobles@pswmlaw.com
rmckirgan@pswmlaw.com

SANDY HATFIELD CLUBB,

called as a witness herein, having been duly sworn by the Certified Reporter, was examined and testified as follows:

10:58:57 EXAMINATION

BY MS. ROBLES:

Q. All right. Thank you. So just a couple of quick introductory things that we need to discuss. Have you been deposed before?

10:59:10 A. Yes.

Q. Okay. So then this will probably be a familiar process. We just want to try not to speak over one another because the court reporter is transcribing the things that we say. And also, if I say a question that 10:59:25 isn't clear or you have any questions, if there's something that you want to clarify before you answer, you should feel free to ask me to clarify or repeat the question.

A. Okay.

10:59:35 Q. Same thing, if there's anything later on, if you want to go back and correct or discuss, feel free to just bring that to my attention and we'll go back and do that.

We can take a break if you need to. I don't think that we'll be very long, so we may not need it. But 10:59:51 definitely let me know if you need to take a break for any

reason, and we'll go off the record and come back on.

A. Sounds good.

Q. Okay. Let's start with just some background questions. So what is your educational background?

11:00:06 A. I have an undergraduate degree in business administration; a graduate degree in education and kinesiology, health, and sports studies.

Q. What is your employment experience?

A. I started in collegiate athletics as a Division 3 11:00:27 aquatics coach: men's water polo, women's swimming. Took an internship at Arizona State in administration. Was there 16 years in progressive positions from intern to senior associate athletics director, and then I -- and senior women administrator. And then I took a job as 11:00:48 athletic director at Drake University. I was there for 11 years and then joined The PICTOR Group, which is a consulting firm that focuses just on college athletics, and was promoted to president a couple years into that position. And I'm still currently the president of PICTOR 11:01:07 Group.

Q. Okay. We're going to be talking about the assessment of the athletic department that you did for ASU in 2018. Have you done other assessments similar to that one?

11:01:20 A. Yes.

Q. How often or how many would you say? It can be an estimate.

A. I don't know. I'll say 5 to 10 range.

Q. Okay. What other things do you do in your job as a consultant for PICTOR Group?

11:01:36

A. Primarily I work on strategic initiatives, so I work with primarily large organizations. I do work with individual institutions like Arizona State, but I work for national governing bodies, for the NCAA. I work for the Knight Commission on Intercollegiate Athletics. So I work on some much larger, broader organizations, but I also work on individual -- at individual institutions. Did I completely answer that question?

11:01:58

Q. Yeah. Thank you.

11:02:11

So when did you first start working with the athletic department at ASU?

A. In 20- -- probably late 2017, early 2018.

Q. Did you know Ray Anderson before that point?

A. I did not know Ray before I started -- before I joined The PICTOR Group.

11:02:31

Q. Okay.

A. I knew of him, but I didn't know him personally.

Q. Okay. So how did you come to be hired to do that culture assessment?

11:02:42

A. So I'm familiar with a number of people that are

in the leadership at Arizona State as I had worked with them previously before I left. Jean Boyd and Christine Wombacher, a number of people. So . . .

Q. And can you explain the beginning of the assessment, how you were brought in?

A. It was a while ago. So I was visiting with Jean Boyd and with Ray Anderson just about kind of their needs. We had moved back. We were in Des Moines, Iowa, and we moved back to the Valley after joining PICTOR Group with hopes to start working with Arizona State, among other national clients. So I started visiting with Jean and with Ray about, you know, "What are your needs?" What could I do to, you know, help facilitate those needs based on the work that I'm doing and what I might be able to bring. And so we talked about doing a culture assessment. And that's how we started onto this particular set of work.

Q. Okay. And at that point had you done other culture assessments?

A. Yes, over the years, either -- prior to being part of The PICTOR Group. So we did extensive culture assessment work at Drake University and had done some things prior to even being at Drake.

Q. And were the procedures that you followed in your culture assessment at ASU fairly similar to those other

assessments?

A. Yes. That's what I used as a model.

MS. ROBLES: All right. I would like to mark an Exhibit 38.

(Deposition Exhibit 38 was marked for identification.)

BY MS. ROBLES:

Q. So can you tell me about this document, when it was created, how it was created?

11:05:05 A. Yes.

MR. ROWLETT: Can you give Bates labels since I don't know what exhibit you're showing her?

MS. ROBLES: Yes, of course. It's Bates-labeled ABOR.COHEN003752.

11:05:18 MR. ROWLETT: Thank you.

MS. ROBLES: Of course.

THE WITNESS: So this is the culmination of what would have been a couple of -- I don't know, a few meetings. I don't know how many. It's too far back in my 11:05:31 memory. But this was kind of the culmination -- I call it an intake meeting, so it was kind of our final meeting with Ray as we were moving into the assessment process. Because the assessment -- tone of the assessment, if you will, needs to be set by the leader of the department, so 11:05:55 this was just making sure we were on the same page and how

STATE OF ARIZONA )
COUNTY OF MARICOPA )

BE IT KNOWN that the foregoing proceedings were taken before me; that the witness before testifying was duly sworn by me to testify to the whole truth; that the foregoing pages are a full, true, and accurate record of the proceedings all done to the best of my skill and ability; that the proceedings were taken down by me in shorthand and thereafter reduced to print under my direction.

I CERTIFY that I am in no way related to any of the parties hereto nor am I in any way interested in the outcome hereof.

[ ] Review and signature was requested.

[ ] Review and signature was waived.

[X] Review and signature was not requested.

I CERTIFY that I have complied with the ethical obligations set forth in ACJA 7-206(F)(3) and ACJA 7-206 (J)(1)(g)(1) and (2). Dated at Phoenix, Arizona, this 15th day of March, 2023.

Meri Coash

Meri Coash, RMR, CRR
Certified Reporter
Arizona CR No. 50327

I CERTIFY that Coash Court Reporting & Video, LLC, has complied with the ethical obligations set forth in ACJA 7-206 (J)(1)(g)(1) through (6).

COASH COURT REPORTING & VIDEO, LLC
Registered Reporting Firm
Arizona RRF No. R1228

# Exhibit 2



# *Achieving Optimal Performance*

The
PICTOR
Group

**Senior Management Team**
**Culture Assessment**
**Summary Report**

Process

FINAL

Over a period of three weeks, Sandy Hatfield Clubb of ***The PICTOR Group*** performed a culture assessment of the Sun Devil Athletics Senior Management Team that involved the following engagement:

1. Conducted individual and confidential interviews with all 22 members of the Senior Management Team (interview schedule and questions with a summary of the answers are attached);
2. Performed an online and anonymous survey with 15 members of the "Executive" Senior Management Team (survey questions and responses, and a list of the individuals surveyed are attached);
3. Observed regularly scheduled meetings of the Senior Management Team, Sport Administrator group, "Executive" Senior Management Team lunches, and All Staff; and,
4. Collected a brief Position Questionnaire (copy attached) completed by each member of the Senior Management Team.

Introductory Comments

Ray Anderson is incredibly well respected as the leader of Sun Devil Athletics. It is clearly understood that Ray expects all members of the Sun Devil Athletics program to act with integrity and run a compliant program.

The Senior Management Team (SMT) is made up of an extremely talented, caring, and diverse group of people. Individuals are involved for the right reasons and want to perform at their best. While some dysfunction is apparent among the team, it is evident that a team-orientated attitude and intentional focus and effort will move the SMT to a high performing team.

The recommendations below are presented as a starting point for the SMT to collaboratively determine next steps to improve the performance of the team and thus the culture of the department.

Exhibit 44
Name: Clubb
Meri Coash 4-2-24

Recommendations

**Culture & Climate**

- Define *The Sun Devils Athletics Way* as the WHY and CLEAN as the HOW to develop and lead the culture and business practices of Sun Devil Athletics.

- Create a small working group to re-evaluate and tweak *The Sun Devil Athletics Way* to engage the entire Sun Devil community.

- Articulate and broadly share SDA values, mission, vision, purpose and strategic plan.

- Create intentional, pervasive and accountable structures that will support and facilitate the culture of Sun Devil Athletics. Include such in the recruiting and on-boarding process for all stakeholders.

- Assess the climate of the athletics program to insure inclusivity and a voice for all concerned. Particular attention may need to be paid to the climate for female administrators.

**Roles & Responsibilities – HIGH PRIORITY TO ADDRESS**

- Update SMT member's job descriptions. Define the role of each administrator and, where appropriate, include an articulation of how each position supports the other. Where intentional job responsibility overlap exists, clearly articulate the purpose and ensure that maintaining lines of communication between and from administrators is a priority.

- Articulate performance expectations and tie annual evaluation process to updated job descriptions.

- Evaluate the organizational chart and the distribution of operational oversight.

- Develop a sport administrator handbook to provide more consistent oversight across sports. Clarify sport administrator role as that of manager and leader of the head coach as first priority and as champion of the sport as second.

- The multi-sport administrator model may need further evaluation to tighten up any gaps in communication that allow a coach to manipulate the model.

**Meetings**

- Evaluate the SMT size. It costs SDA $1,814/hour and $7,256/month to host a full SMT meeting (23 members). If at the desirable size, clarity of purpose as well as efficiency and effectiveness of SMT meetings may need further evaluation.

- Re-examine the number of meetings and the corresponding schedules. Articulate purpose of each meetings and, where needed, create communication efficiencies for use of time.

**Communication**

- Create a Compact for Excellence or agreed upon rules of engagement for inclusive communication between SMT members. Create a "no complaining" rule reminding SMT to work directly with the person/people of concern and not talk behind people's back.

- Increase awareness of self and others. Intentionally work on building trust in both character and competency, particularly between the most senior members of SMT.

- Create agreement about confidentiality, professional management of information, and respectful support for each team member. Improve information sharing and firmly address any member of the team that withholds information as capital or for personal gain.

- As a team, learn to openly debate and critically assess issues, and resolve problems with the right people in the room. Improve ability to collaborate through candid, respectful and open conversations.

- Include operational areas effected by decisions in the decision-making process.

- Explore what it would take to ensure that every member of the SMT models how to speak up under every circumstance in which a lack of integrity is in question. Create educational programming, as needed, for SMT and the department.

**Operations**

- Ensure all members of the SMT know where SDA policies and procedures are located and the person or people designated for the responsibility for annual maintenance of same.

- Utilize the NCAA IPP system to compare operational budgets against the PAC-12.

- Articulate and broadly circulate protocol for crisis management.

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 7, 2025, I transmitted the above documents to the individuals identified below via email.

Robert H. McKirgan
Jennifer Lee-Cota
Papetti Samuels Weiss McKirgan LLP
rmckirgan@pswmlaw.com
jleecota@pswmlaw.com

José de Jesús Rivera
Miller, Pitt, Feldman & McAnally P.C.
jrivera@mpfmlaw.com

Michael J. Pérez