Michael J. Pérez (California SBN 151039)
     Admitted *Pro Hac Vice*
Jeffrey R. Feasby (California SBN 208759)
     Admitted *Pro Hac Vice*
Evan C. Flores (California SBN 325006)
     Admitted *Pro Hac Vice*
PEREZ VAUGHN & FEASBY Inc.
600 B Street, Suite 2100
San Diego, California 92101
Telephone: 619.784.3549
Facsimile: 619.460.0437
E-Mail: perez@pvflaw.com


José de Jesús Rivera (AZ SBN 004604)
Miller, Pitt, Feldman & McAnally P.C.
2800 N. Central Avenue
Phoenix, Arizona 85004
Telephone: 602.266.5557
E-Mail: jrivera@mpfmlaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Cohen, an individual,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>Arizona Board of Regents, and Raymond Anderson, an individual.<br><br>　　　Defendants. | Case No. 2:21-CV-01178-GMS<br><br><br>**PLAINTIFF'S MOTION IN LIMINE NO. 5 OF 5 TO EXCLUDE PLAINTIFF'S PRIVATE FINANCIAL DOCUMENTS AT TRIAL; DECLARATION OF MICHAEL J. PEREZ** |

Plaintiff David Cohen ("Plaintiff") hereby moves the Court for an order *in limine* as follows:

Defendant is prohibited from referencing or introducing any evidence regarding Plaintiff's seized personal financial records and/or the information contained therein.

## I.    RELEVANT FACTS

On August 15, 2019, Plaintiff was told he had been terminated. He was forced to leave his office and personal items behind. Soon after, ABOR instructed an employee, Mike Chismar, to "clear out" Plaintiff's office before he had the opportunity to retrieve his belongings. Pérez Decl., Ex. 1 (Ferrara Depo.) at 25:25-26:13. While "clearing out" the office, Mr. Chismar discovered Plaintiff's personal financial records – including Plaintiff and his wife's checkbooks and personal bank statements ("Personal Financials"). *Id*. at 27:7-15. Chismar promptly notified ASU's acting CFO, Frank Ferrara, of the documents, who then joined Chismar in Cohen's office to examine them himself. The financial records clearly listed on the cover page of the ledgers, that they were Plaintiff's and Plaintiff's wife's private financial records. Pérez Decl., Ex. 2 (ABOR.COHEN002020); *see also* Pérez Decl., Ex. 1 (Ferrara Depo.) at 85:2-12.) Having quickly determined that the Personal Financials belonged to Cohen and his wife, Mr. Ferrara decided to leave them "where [he] found them" upon exiting the office. *Id*. at 27:10-15; 83:15-17. Several days later, Defendant learned that Plaintiff was returning to his office to pick up his personal items. At that time, and after Defendant was aware that these were Plaintiff's private financial records, Ferrara was instructed by Defendant's counsel to return to the office and make copies of the private financial documents. *Id*. at 20:22-21:5; 83:19-25, 84:1-12.

The Personal Financials consist of (1) a photocopied spreadsheet related to ticket sales, with handwritten notes at the bottom of the page, (2) a photocopied page from Plaintiff and his wife's December 2017 Edward Jones account summary, and (3) three black and white, partial, pixelated photographs of a checkbook, a February 2017 Edward Jones account summary, and a check from Vivid Seats, LLC addressed to Arizona State Athletics. Ferrara also handwrote notes on each page.

## II.  <u>THE FINANCIAL DOCUMENTS ARE INADMISSIBLE HEARSAY</u>

The Personal Financials, with the exception of the check, are inadmissible hearsay. *See* Fed. R. Evid. 801.[1] To qualify under the business records exception, Rule 803(6) requires the proponent of the evidence must establish the necessary foundation through either "the testimony of the custodian or another qualified witness, or by a certification." Fed. R. Evid. 803(6)(D). Defendant did not include any record custodians on their witness list, and the Personal Financials are not accompanied by a custodian certificate. As such, they are inadmissible. See *Stenson v. Edmonds*, 86 F.4th 870, 880 (10th Cir. 2023). Ferrara's handwritten notes on each document are equally inadmissible as hearsay.

## III.  <u>THE FINANCIAL RECORDS ARE UNFAIRLY PREJUDICIAL</u>

Despite Defendant's contention to the contrary, the Personal Financials are unrelated to the retaliation Plaintiff suffered. The Personal Financials were discovered by Defendant only ***after*** Plaintiff was told by his supervisor that he was fired on August 15, 2019.

Defendant seeks to use the Personal Financials to imply that Plaintiff had been stealing from his employer. Specifically, the Personal Financials include documents from a third-party ticket broker, Vivid Seats, LLC ("Vivid"), to whom Plaintiff sold a large quantity of tickets at a discounted rate. However, Defendant explicitly approved the transaction. Ferrara Depo at 18:11-16. Plaintiff later received a check from Vivid for those seats and inadvertently deposited the money into his personal banking account. Upon realizing his mistake, Plaintiff immediately sent the money back. The Athletic Department received the money less than three months after the check was erroneously sent to Plaintiff.

Given Defendant's approval of the transaction, a lack of evidence or testimony disputing Plaintiff's version of events, and the date of discovery, the Personal Financials are irrelevant. Even if marginally relevant, the Personal Financials should be excluded under

---

[1] In addition to the evidentiary issues set forth herein, Plaintiff believes that Defendant's conduct in obtaining and copying the Personal Financials constitutes an unlawful intrusion of Plaintiff's private affairs in violation of the Arizona Constitution's Right to Privacy under Article 2, Section 8 ("[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law"). As a result, Plaintiff has filed a complaint with the Arizona Police regarding this incident.

Rule 403. Admitting these materials would invite the jury to impermissibly and prejudicially speculate that Plaintiff intended to steal money from Defendant or that Plaintiff was fired for theft. The result would be to obscure the actual dispute—whether retaliation occurred in 2019, two years later, and force Plaintiff to defend against collateral, unrelated matters.[2]

## IV.    THE PERSONAL FINANCIALS LACK FOUNDATION

A party seeking to produce documentary evidence must authenticate that evidence. Fed. R. Evid. 901. Ferrara did not prepare the Personal Financials. See Fed. R. Evid. 902(9).

Similarly, the various photographs of the Personal Financials are subject to Rules 1002-1003. *United States v. Stockton*, 968 F.2d 715, 719 (8th Cir. 1992). Here, under direction of Defendant's attorneys, Ferrara rifled through Plaintiff's personal belongings, took photographs and made copies before Plaintiff was aware his rights were being violated.

## V.    INADMISSIBLE CHARACTER EVIDENCE

Defendants want to introduce the Personal Financials so the jury can infer that Plaintiff is untrustworthy. To this extent, Defendants' anticipated use of Plaintiff's financial records also violates Rules 404(b) and 405. A character or trait may be proved by specific instances of the person's conduct only when the person's character or character trait is an essential element of a charge, claim, or defense. Fed. R. Evid. 405(b). Here, Plaintiff's character is not an essential element of any of Defendant's defenses or Plaintiff's claims. *See Gibson v. Mayor & Council of City of Wilmington* (3rd Cir. 2004) 355 F.3d 215, 232-33 (holding officer's character was not essential element in action alleging termination in violation of First Amendment despite defendant's contentions that plaintiff was a "bad" cop). Thus, any attempt by Defendant to use the Personal Financials to prove Plaintiff's character for trustworthiness is improper. *United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995) (holding if proof of the character alone cannot satisfy essential element, then character is not essential and evidence should be limited to opinion or reputation testimony).

---

[2] Plaintiff was not reprimanded for sitting the Vivid Board or for his work with the ASU seat allocation. In fact, to the contrary, there are no negative personnel records of this incident and Plaintiff received one of the highest bonuses in the Athletic Department shortly after this occurred.

3

1

## VI.    <u>CONCLUSION</u>

2    For the reasons stated above, this Court should exclude the unlawfully obtained

3 financial information.

4

5 DATED: November 7, 2025        PEREZ VAUGHN & FEASBY INC.

6

7                    By: _____

8                        Michael J. Pérez
                         Evan C. Flores
9                        Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATION OF COUNSEL**

Pursuant to LRCiv 7.2(1), the undersigned counsel certifies that the parties have met and conferred in good faith in an effort to resolve the disputed evidentiary issues that are the subject of this motion.


DATED: November 7, 2025          PEREZ VAUGHN & FEASBY INC.


By: _____

Michael J. Pérez
Attorneys for Plaintiff

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**DECLARATION OF MICHAEL J. PEREZ**</u>

I, Michael J. Pérez, hereby declare,

1.    I am an attorney duly licensed to practice law in the State of California and admitted *pro hac vice* for this matter. I am a partner at the law firm of Pérez Vaughn & Feasby Inc., attorneys for plaintiff David Cohen in the above-captioned action. I have personal knowledge of the facts set forth in this declaration and, if called upon to testify, I could and would testify competently thereto.

2.    On April 10, 2024, Plaintiff took the deposition of Frank Ferrara. A true and correct copy of the relevant excerpts from Mr. Ferrara's deposition transcript are attached herein as Exhibit 1.

3.    Attached herein as Exhibit 2 is a true and correct copy of a document produced in this case as Bates No. ABOR.COHEN002020.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 7th day of November, 2025, in San Diego, California.

_____

Michael J. Pérez

6

Exhibit 1

# In the Matter of:

*Cohen*

*vs*

**Arizona Board of Regents, and Anderson**

---

*Frank Ferrara*

*April 10, 2024*

---



**GRIFFIN GROUP INTERNATIONAL**

3200 East Camelback Road, Suite 177
Phoenix, Arizona 85018

UNITED STATES DISTRICT COURT

For the

District of Arizona


```
David Cohen,                      |

            Plaintiff,            |

                                  |

            v.                    |      Civil Action No.
                                  |      2:21-CV-01778-GMS
Arizona Board of Regents and      |
Raymond Anderson,                 |

            Defendants.           |

_____   |
```

_____

ZOOM DEPOSITION OF FRANK FERRARA

Wednesday, April 10, 2024

_____

4

```
 1                    P R O C E E D I N G S

 2                           - - -

 3     WHEREUPON,

 4                        FRANK FERRARA,

 5     having been first duly sworn, was examined and testified

 6     as follows:

 7                    MR. ROWLETT:  Thank you, madam

 8     court reporter.  We're on the record at 8:02 a.m.

 9

10                        EXAMINATION

11     BY MR. ROWLETT:

12            Q    Good morning, Mr. Ferrara.  My name is

13     Chris Rowlett.  I represent plaintiff, David Cohen.  How

14     are you today?

15            A    Good.  How are you, Christopher?

16            Q    I'm well, thank you.

17                 Have we met before today?

18            A    I don't believe we have.

19            Q    I don't believe we have either.

20            A    In this matter, you are being represented

21     for purposes of this deposition -- well, withdrawn.

22                 Are you being represented by any

23     attorneys for purposes of this deposition?

24            A    I am not -- well, I'm not being

25     represented personally, if that's what you're
```

Cohen vs                                                                    Frank Ferrara
Arizona Board of Regents, and Anderson

18

1       Q    Needed to put bunson (phonetic) seats?

2       **A    Needed to put bunson seats.**

3       Q    And did -- are you aware if Mr. Anderson

4    weighed in on this, you know, let's say, healthy

5    difference of opinion you had regarding the discount to

6    the ticket broker?

7       **A    He did.**

8       Q    And what was his decision?

9       **A    He heard us out and he felt like -- he**

10   **eventually gave his approval to offer this.**

11      Q    Okay.  So this discount, that was

12   ultimately offered to Vivid Seats, was approved by

13   Ray Anderson some time in the 2017 time frame; is that

14   correct?

15      **A    Yes.  Some time in the 2017 time frame,**

16   **yes.**

17      Q    Excellent.  Let's go to page 2.  What is

18   page 2?

19      **A    So page 2 is a copy of Dave's -- sorry,**

20   **Cohen Consulting's checkbook.**

21      Q    Okay.  Who made this copy?

22      **A    I did.**

23      Q    And there's some handwriting on this.  Is

24   that your handwriting?

25      **A    It is, Christopher.**



20

```
 1   investigations going on that we've disclosed and

 2   discussed related to Vivid tickets.

 3             So, Frank, if you can answer -- if you

 4   can answer this without going into attorney-client

 5   communication.

 6             THE WITNESS:  I'm sorry, how do I do that

 7   then?

 8             MS. LEE-COTA:  Okay.  Well, then I'm

 9   going to instruct you not to answer.

10             THE WITNESS:  Okay.

11             MR. ROWLETT:  Thank you.

12   BY MR. ROWLETT:

13        Q    Just so I'm clear, I was confused.  I

14   thought you went into his office in August of 2019 and

15   found some documents and made some copies.  Did someone

16   ask you to do that?

17             MS. LEE-COTA:  So, Chris, we're getting

18   into instructions provided by --

19             MR. ROWLETT:  I'm just asking if someone

20   asked him to do that.  I didn't ask who.

21   BY MR. ROWLETT:

22        Q    Did someone, Frank, ask you to go into

23   Dave's office and make copies of documents?

24        A    Yes.

25        Q    Was that someone an attorney?
```

Cohen vs                                                                        Frank Ferrara
Arizona Board of Regents, and Anderson

21

1          **A     Yes.**

2          **Q     Was that an attorney in the general**

3    **counsel's office of the university -- or Arizona State**

4    **University?**

5          **A     Yes.**

6          Q     When did you go into Dave Cohen's office

7    to make these copies?

8          **A     It was prior -- it was after he left, but**

9    **prior to him, obviously, picking them up.  So some time**

10   **in August.**

11         Q     This first document that we looked at,

12   Bates-labeled 2016, you already had a copy of this --

13   withdrawn.

14               Did you already have a copy of this

15   before you went into Dave Cohen's office in August of

16   2019?

17         **A     I don't recall.**

18         Q     But this one that we see here --

19         **A     Oh, no, which one?  I'm sorry, I'm**

20   **looking at the wrong doc- -- this one I did, yes.  I**

21   **thought you were talking about the other one.**

22         Q     Do you have some documents in front of

23   you, sir?

24         **A     It's the same ones.**

25         Q     The same six documents -- we haven't --

25

1    counsel's instructions?

2            **A    Yes.  You keep saying that and I don't**

3    **know if that's accurate.  I just wanted you -- you keep**

4    **saying per their instructions.  It was found in the**

5    **office by someone else, and we told counsel what was in**

6    **the office.**

7            Q    Who found it in the office?

8            **A    Mike Chismar (phonetic) found it.**

9            Q    Was Mike Chismar asked to go in and

10   search Dave Cohen's office?

11           **A    There were items that were left --**

12           MS. LEE-COTA:  Object to form,

13   foundation.

14           **THE WITNESS:  Maybe I should --**

15           MS. LEE-COTA:  Hold on.  Hold on, Frank,

16   just a second.

17           So, Frank, if you know the answer to this

18   question, and it doesn't go into any attorney-client

19   privilege communications, then you can go ahead and

20   answer.  But if you -- I'm just going to instruct you

21   not to answer if it goes into information you know

22   because of attorney-client communications.

23           **THE WITNESS:  I'll try to answer the best**

24   **way I can.**

25           ==Mark Chismar was going through his office==

26

1    to clear it out for another employee to take the office

2    over, and there were items that were found after he

3    left -- after Dave -- at least what was left the first

4    time.  He subsequently came and picked them up, I think,

5    a couple of weeks later.

6    BY MR. ROWLETT:

7                Q    Did you ask Mark Chismar to go collect --

8    well, withdrawn.

9                Is it fair to say that Mr. Chismar was

10   asked to collect Mr. Cohen's personal effects from his

11   office to clear it out?

12               MS. LEE-COTA:  Object to foundation.

13               THE WITNESS:  Yeah.

14   BY MR. ROWLETT:

15               Q    You don't know?

16               A    No.

17               Q    Is this your -- we see a picture here.

18   Is this your hand?

19               A    That's my hand.

20               Q    Where were you when you took this

21   picture?

22               A    I was in the office.

23               Q    Your office?

24               A    No -- well, all of our offices, I guess.

25   I was at Arizona State University.  I don't have a copy



Cohen vs                                                        Frank Ferrara
Arizona Board of Regents, and Anderson

27

1    machine in my office, so I believe that was the copy

2    machine in the hallway, Christopher.

3              Q    Thank you.  And did Mr. Chismar

4    provide -- how did you get these documents -- withdrawn.

5              How did you get these documents from

6    Mr. Chismar?

7              A    Mr. Chismar called me and said, listen,

8    we found some things in his office.  It looks like a

9    checkbook and some other documents.  So I walked in

10   there with him.  He was already looking at -- and there

11   were other items, too, that were, obviously -- we were

12   trying to question whether they belong to Dave or

13   whether they belong to ASU.  And I opened up the

14   checkbook, and it said, no, this is his checkbook, this

15   is not ours.

16             Q    At that point you identified this was

17   Dave Cohen's personal property, not Arizona State

18   property; is that correct?

19             MS. LEE-COTA:  Object to form.

20             THE WITNESS:  That is correct.

21   BY MR. ROWLETT:

22             Q    I'm sorry, your answer was that's

23   correct?

24             A    My answer was that's correct.

25             Q    And you decided to make copies of some of



28

1    Dave Cohen's personal property?

2                    MS. LEE-COTA:  Object to form.

3                    THE WITNESS:  Does that mean I can

4    answer?  I've never done --

5                    MS. LEE-COTA:  Yeah, yeah, Frank, you

6    can answer.

7                    THE WITNESS:  Okay.  Christopher would

8    you mind repeating the question?

9    BY MR. ROWLETT:

10               Q    Yeah.  When you -- after you identified

11   certain items, as Dave Cohen's personal property, at

12   that point you decided to make copies of those items?

13                    MS. LEE-COTA:  Object to form.

14                    THE WITNESS:  I did.

15   BY MR. ROWLETT:

16               Q    And was this before or after you had a

17   conversation with counsel?

18               A    After.

19               Q    So what happened between when you

20   determined that this was Dave Cohen's personal property

21   and when you made copies.  Did you call counsel, did

22   they call you?

23               A    I did not call counsel and they did not

24   call me.

25               Q    How did you get from identifying this as

233

```
         CERTIFICATE OF DEPOSITION OFFICER
     I, Dalia Ambriz, RPR, CSR, (IL, AZ), commissioned
to administer oaths, do hereby certify that previous to
the commencement of the examination, the deponent was
duly sworn by me to testify the truth in relation to
matters in controversy between the said parties; that
the said deposition was taken in stenotype by me at the
time and place aforesaid and was thereafter reduced to
typewritten form by me; and that the foregoing is a true
and correct transcript of my stenotype notes thereof.
     That I am not an attorney nor counsel nor in any
way connected with any attorney or counsel for any of
the parties to said action nor otherwise interested in
the outcome of this action.
__X__ Reading and Signing was requested.
_____ Reading and Signing was not requested.
_____ Reading and Signing was waived.
_____ Reading and Signing is not required.
          __  /s/  Dalia Ambriz_____
          Dalia Ambriz, RPR, CSR (IL, AZ)
```

Exhibit 2



Account Holder(s) David H Cohen & Kathryn N Cohen
Account Number
Financial Advisor Jeff Albright, 503-245-7063
5331 SW Macadam Avenue, Suite 264, Portland, OR 97239

Statement Date Nov 25 - Dec 31, 2017

Page 1 of 4



David H Cohen &
Kathryn N Cohen

## Edward Jones Tax Forms

Edward Jones will furnish all Forms 1099-R and 1099-Q by Jan. 31, 2018, and all Consolidated 1099 Tax Statements by Feb. 15, 2018, per IRS requirements. Some Consolidated 1099 Tax Statements may be labeled as Figures Not Final and will be finalized by March 15. Visit www.edwardjones.com/taxcenter to learn more about your Edward Jones tax forms.

## Joint Tenants With Right of Survivorship, TOD

### Account Value

### Value Summary

| | This Period | This Year |
|---|---|---|
| Beginning value | ███ | ███ |
| Assets added to account | ██ | ██ |
| Assets withdrawn from account | ██ | ██ |
| Fees and charges | | ██ |
| Change in value | ██ | |
| **Ending Value** | ███ | |

For more information regarding the Value Summary section, please visit www.edwardjones.com/mystatementguide.

### Rate of Return

| Your Personal Rate of Return for Assets Held at Edward Jones | This Quarter | Year to Date | Last 12 Months | 3 Years Annualized | 5 Years Annualized |
|---|---|---|---|---|---|
| | | | | | |

**Your Personal Rate of Return:** Your Personal Rate of Return measures the investment performance of your account. It incorporates the timing of your additions and withdrawals and reflects commissions and fees paid. Reviewing Your Personal Rate of Return is important to help ensure you're on track to achieving your financial goals.

The performance of your investments is tracked since they have been held in the current account, but no earlier than Jan.1, 2009. This also includes investments you owned during this time period but have since sold. Certain events, including a transfer of an investment between accounts, share class conversion, or change in an investment's identification code (CUSIP) caused by a corporate action, will impact the time frame over which the investment's rate of return is calculated.

Information used to calculate performance may have been obtained from third parties and Edward Jones cannot guarantee the accuracy of such information.

For the most current information, contact your financial advisor or visit www.edwardjones.com/rateofreturn

201 Progress Parkway
www.edwardjones.com
Member SIPC

CONFIDENTIAL

ABOR.COHEN002020

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that, on November 7, 2025, I transmitted the above documents to the

3   individuals identified below via email.

4      Robert H. McKirgan
       Jennifer Lee-Cota
5      Papetti Samuels Weiss McKirgan LLP
       rmckirgan@pswmlaw.com
6      jleecota@pswmlaw.com

7

8      José de Jesús Rivera
       Miller, Pitt, Feldman & McAnally P.C.
9      jrivera@mpfmlaw.com

10

11      _____

12                      Michael J. Pérez

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28