# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| David Cohen,<br><br>             Plaintiff,<br><br>    v.<br><br>Arizona Board of Regents; and Raymond Anderson, an individual,<br><br>             Defendants. | Case No. 2:21-cv-01178-PHX-GMS<br><br>**JOINT PROPOSED FINAL PRETRIAL ORDER** |

IT IS HEREBY ORDERED that this Final Pretrial Order jointly submitted by the parties, as amended by the Court, is hereby APPROVED and ADOPTED as the official Pretrial Order of this Court.

**A.    TRIAL COUNSEL FOR THE PARTIES**

Plaintiff:

PEREZ VAUGHN & FEASBY Inc.
600 B St., Suite 2100
San Diego, CA 92101

Michael J. Pérez
Direct Line: (619) 741-0282
Email: perez@pvflaw.com

Jeffrey R. Feasby
Direct Line: (619) 741-0242
Email: feasby@pvflaw.com

Evan C. Flores
Direct Line: (619) 784-1442
Email: flores@pvflaw.com

Marissa S. Denison

Direct Line: (619) 784-3550
Email: denison@pvflaw.com

Miller, Pitt, Feldman & McAnally P.C.
2800 N. Central Avenue
Phoenix, Arizona 85004

José de Jesús Rivera
Telephone: (602) 266-5557
Email: jrivera@mpfmlaw.com

Defendant:

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road, Suite 290
Scottsdale, AZ 85254

Robert McKirgan
Direct Dial: 480.800.3533
Email: rmckirgan@PSWMlaw.com

Larry Kasten
Direct Dial: 480.908.1855
Email: lkasten@PSWMlaw.com

Jennifer Lee-Cota
Direct Dial: 480.800.3528
Email: jleecota@PSWMlaw.com

Heather Robles
Direct Dial: 480.800.3522
Email: hrobles@PSWMlaw.com

**B.    STATEMENT OF JURISDICTION**

1.    Cite the statute(s) which gives this Court jurisdiction. (E.g., Jurisdiction in this case is based on diversity of citizenship under Title 28 U.S.C. § 1332.)

Jurisdiction in this case is based on 28 U.S.C. § 1331 as the claims arise under Title VII and Title IX.

2.    State whether jurisdiction is or is not disputed. (If jurisdiction is disputed, the party contesting jurisdiction shall set forth with specificity the bases for the objection.)

Jurisdiction is not disputed.

## C.     STIPULATIONS AND UNCONTESTED FACTS AND LAW

**1.     The following material facts are admitted by the parties and require no proof:**

A.     The Arizona Board of Regents ("ABOR") governs Arizona State University ("ASU"), as well as the University of Arizona and Northern Arizona University, pursuant to Arizona law.

B.     In February 2014, Ray Anderson became the Athletic Director ("AD") of ASU.

C.     David Cohen began working at ASU as a Senior Associate Athletic Director in June 2014. Anderson was his direct supervisor at all relevant times.

D.     At all relevant times, Cohen was an at-will employee and could be fired for any reason other than an unlawful one.

E.     While at ASU, Cohen received regular training from ASU regarding sexual harassment and his reporting obligations related to sexual harassment.

F.     While at ASU, Cohen was in charge of ticketing for the athletic department, including football and men's basketball. Cohen also served as sports administrator for several sports at various times throughout his tenure, including softball, men's and women's swimming and diving, men's basketball, and hockey.

G.     On March 14, 2019, following a Pac-12 Men's Basketball tournament game taking place in Las Vegas, Cohen was approached by his wife (Kathy Cohen), the Men's Basketball team's coach's wife (Leslie Hurley), and one other woman. They confided in Cohen that an ASU basketball donor, Bart Wear, had sexually harassed Kathy Cohen and the other woman during the game and that Wear had sexually harassed Leslie Hurley on prior occasions. Given the ongoing basketball season and concerns over how the coach would handle the news, the women asked Cohen to delay taking any action until the basketball season concluded. Cohen first told Anderson of certain of Wear's alleged misconduct on March 25, 2019 (after the basketball season had ended) in a meeting with himself, Anderson and Scott Nelson. Anderson instructed

Nelson to follow up with Rick Shangraw as to whether there had been other similar complaints about Wear. A few weeks later, Nelson talked to Shangraw and reported back to Anderson that there were no other such complaints, and the next step would be for Anderson to speak to Wear.

       H.     In April 2019, Cohen told Jean Boyd, a senior associate athletic director, about the Wear allegations and asked Boyd to keep the matter confidential.

       I.     On May 3, 2019, Cohen approached Anderson during a baseball game and asked whether Anderson had spoken to Wear yet. Anderson told Cohen that he had not.

       J.     On May 13, 2019, Ray Anderson, Jean Boyd, Herm Edwards and Bart Wear traveled to San Francisco for a weekend of golf on a private jet service.

       K.     On May 20, 2019, David Cohen had a follow up meeting with Jean Boyd about Wear.

       L.     At no time did Cohen report the Wear allegations to Deena Garner Smith, the Title IX coordinator for the athletic department.

       M.     In June 2019, Anderson removed Cohen as administrator for the men's and women's swimming programs. Cohen received his annual review on or around June 13, 2019. Cohen received a $95,000 bonus in July 2019. This equaled the highest bonus Cohen ever received while employed at ASU. Cohen's prior bonuses were: $95,000 in 2015; $85,000 in 2016; $75,000 in 2017; and $80,000 in 2018.

       N.     On August 12, 2019, Anderson met with Cohen and Ferrara and informed Cohen that he would be reporting to Ferrara, the CFO of the Athletic Department for ticketing. Ferrara, like Cohen, was a Senior Associate Athletic Director.

       O.     The reporting change did not affect Cohen's salary or title.

       P.     On August 12, 2019, after being informed of the change in reporting line for ticketing to Ferrara, Cohen went to speak with Kevin Salcido, the Vice President of Human Resources at the time.

Q.    On August 15, 2019, Anderson informed Cohen that Cohen was terminated.

R.    After August 15, 2019, Cohen was placed on paid administrative leave.

S.    After Cohen was placed on paid administrative leave, ASU retained an outside law firm, Armstrong Teasdale, to conduct an independent investigation.

T.    The investigation began after August 15, 2019.  Cohen was asked to participate in the investigation on August 20, 2019 and Cohen agreed.

U.    Prior to August 15, 2019, no formal investigation had been conducted into the Wear allegations by ASU.

V.    In September 2019, Wear travelled with ASU donors to Michigan for a football game.

W.    Armstrong Teasdale concluded its investigation on November 5, 2019.

X.    On December 12, 2019, Anderson sent Cohen a letter notifying Cohen that Cohen's employment was terminated effective December 13, 2019 and Cohen was removed from ASU payroll effective December 13, 2019.

Y.    At the time of Cohen's termination, Cohen's annual salary (exclusive of bonus) was $191,228.

Z.    Following his termination, Cohen made $131,923 in 2020.

AA.    Following his termination, Cohen made $196,220 in 2021.

BB.    Following his termination, Cohen made $477,614 in 2022.

CC.    Following his termination, Cohen made $455,000 in 2023.

**2.    The following material facts, although not admitted, will not be contested at trial by evidence to the contrary:**

A.  As AD, Anderson would regularly adjust administrative duties for almost everyone in the department and it was not unusual for associate athletic directors to be removed from sports or rotated to different sports.

B.  On January 17, 2018, Cohen was issued a private reprimand by the Pac-12 commissioner related to Plaintiff's verbally aggressive, inappropriate and hostile interactions during a men's basketball game.

**3.      The following issues of law are uncontested and stipulated to by the parties:**

A.      ABOR had actual knowledge of Cohen's reporting about the Wear incident in March 2019, although ABOR contests that Cohen was making a "report" in March 2019 in order to institute a formal investigation of Wear and further disputes that the report constituted "protected activity" under Titles VII and IX, as explained in Section D below and further disputes the specifics of what Cohen asserts he reported in March 2019.

B.      Compensatory damages under Title VII are subject to a statutory cap of $300,000.00. 42 U.S.C.A. § 1981a(b)(3)(D). The jury must not be advised of these limitations. 42 U.S.C.A. § 1981a(c)(2).

C.      Damages under Title IX are limited to those "traditionally available in suits for breach of contract," and do not include punitive damages or damages for emotional distress or reputational harm. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022). Compensatory damages under Title IX are not subject to a statutory cap. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 283 (1998).

D.      By stipulation (Doc. 66) and Court order (Doc. 68), Cohen's claim for punitive damages against ABOR was dismissed with prejudice. By stipulation, Cohen does not seek damages for emotional distress.

E.      To prove causation under Title VII, Cohen must show that the adverse employment action would not have occurred in the absence of the protected activity, *i.e.*, meet the "but-for" causation standard. Events can have more than one but-for cause, and the law will trigger if the protected speech was just one of the but-for causes of the adverse employment action. *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656-7 (2020). In other words, to prove causation, Cohen must show that his protected conduct

was a but-for cause—but not necessarily the only cause—of his termination. *Westendorf v. W. Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 422 (9th Cir. 2013). Cohen must prove that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of ABOR. Court's Ruling on Motion for Summary Judgment, Doc. 99 at 11, citing *Alozie*, 562 F.Supp.3d at 214 (citing *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 360 (2013)).

F.    The Court shall decide the calculations of front pay and back pay, as they are equitable remedies. The Court, however, may consider submitting questions of front and back pay to a jury for advisory findings under Rule 39(c) of the Federal Rules of Civil Procedure. Ninth Circuit Model Civil Jury Instructions § 10, Introductory Comment.

G.    Front pay is granted by a court when reinstatement is inappropriate. *Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1012 (9th Cir. 2010).

H.    Cohen does not seek emotional distress damages.

I.    Cohen does not claim that his termination from ASU, or any alleged retaliatory act by ASU, impacted his ability to seek re-employment with the Atlanta Falcons and will not present any evidence or argument contending that his ASU termination, or any other alleged retaliatory act, prevented him from being re-employed by the Atlanta Falcons.

**D.    CONTESTED ISSUES OF FACT AND LAW**

1.    The following are the material issues of fact to be tried and decided: (Each issue of fact must be stated separately and in specific terms. Each party's contention must be set forth with respect to each and every issue of fact):

**Plaintiff's Issues of Fact**

Issue #1: Cohen's termination.

Plaintiff contends: Cohen was terminated as retaliation for reporting Wear's sexual harassment, then continuing to demand action upon ASU's inaction. For years, Cohen received sizable bonuses and performed his job duties to the best of his abilities.

The only difference between the year he was demoted, placed on leave, then fired and his previous years of working was his various reports of Wear's sexual harassment and demands for accountability. Any reasons given by Defendant for these actions are pretextual and untrue. But even if they were true, they did not arise for the first time in 2019 and thus Cohen's insistence on accountability would have been the actual reason.

Defendant contends:

Defendant contends that Cohen was terminated for performance reasons. Throughout his tenure at ASU, Cohen had ongoing issues with co-workers and was identified as a cultural problem. Cohen had been investigated for ABOR policy violations, including excessive alcohol purchases and accepting a $20,000 fee for serving on an advisory board of Vivid Seats, which was a vendor under contract with ASU.  Cohen had received a reprimand from the Pac-12. Co-workers had reported to Anderson inappropriate comments made to them by Cohen. A third party consultant, Sandy Hatfield Clubb, did a cultural assessment of the athletic department in 2018 and continued her consulting into 2019.  Hatfield-Clubb identified Cohen has the single most cultural problem within the athletic department. These issues had been communicated to Cohen by Anderson prior to March 2019. Also prior to March 2019, Anderson began evaluating and implementing a restructure of the department to reduce the number of direct reports to him. Cohen had been removed as sports administrator of various sports prior to March 2019. Ticket sales in 2018 were below budget. Cohen's bonuses were at Anderson's discretion and had ranged from $75,000 to $95,000 and Cohen was never awarded his full potential bonus of $100,000. By March 2019, prior to the Wear incident and in Anderson's view, Cohen had certain strong skills but had ongoing cultural and behavioral problems. In his June 2019 review, Cohen was removed as administrator of swimming and diving. A coach from that program had complained about Cohen and Anderson wanted Cohen to focus on ticketing sales, which had not met budget. The change in reporting had nothing to do with Bart Wear.  Cohen's bonus in July 20919 was $95,000, which is wholly inconsistent with the assertion that Anderson was retaliating

against Cohen. Prior to March 2019 and also in his June 2019 review, Cohen's ongoing behavioral and cultural issues were raised, and Cohen was told he needed to show improvement in this area. In August 2019, Anderson implemented another change in the structure of the athletic department to reduce his direct reports, and such restructuring impacted more than Cohen. Cohen was now to report to Frank Ferrara, CFO, on ticketing. Cohen remained as administrator of men's basketball, with a direct report to Anderson, and Cohen's bonus would still be determined by Anderson. Cohen reacted negatively to this change, became insubordinate and communicated that he was not going to comply with the change. At that point, Anderson terminated Cohen. After Cohen asserted to Kevin Salcido and others that he was being retaliated against for raising with Anderson the allegations against Wear. A decision was made by HR and the Office General Counsel to put Cohen on paid administrative leave and have an independent investigation done of the Wear allegations and Cohen's allegations of retaliation. Only after the independent investigator concluded that there was insufficient evidence to conclude retaliation occurred was Cohen formally terminated from ASU employment in December 2019. Moreover, evidence was uncovered after Cohen was put on administrative leave, but before his formal termination, that would have resulted in Cohen's termination.  Specifically, Cohen had received a $690,000 payment from Vivid Seats.

        Issue #2: Defendant's handling of Wear.

        Plaintiff contends: Cohen first brought Wear's sexual harassment to Defendant's attention in March 2019. Wear had sexually harassed his wife and two other women, and still posed a serious threat to other staff, spouses, students, and members of the public at future events. Cohen was promised by his direct supervisor, Ray Anderson, that Wear "would be handled." But Anderson has admitted he did not take Cohen seriously and found the allegations of sexual harassment uncredible. Cohen raised the issue many times in the months to follow. It was not until Cohen was released in August 2019 and threatened legal action over retaliation that Defendant first began an investigation into

Wear's misconduct. The investigation found that allegations against Wear had been credible the entire time.

Defendant contends:

Defendant contends that Cohens statements made to Anderson regarding Wear's behavior changed over time and only became more serious in nature after he disagreed with Anderson's change in his reporting on ticketing. Further, when Cohen first told Anderson about Wear, there was no request for an investigation or formal action against Wear. Instead, Cohen agreed that Anderson would have Scott Nelson find out from Rick Shangraw if there were other complaints about Wear's conduct. After Nelson reported back to Anderson that there were no other complaints, Anderson was to speak to Wear and Cohen did not disagree with this approach. Cohen did not ask for an investigation, did not want Wear disassociated from ASU, and failed himself to go to the Title IX coordinator when told by Jean Boyd in May 2019 and by Frank Ferrara in July 2019 to report to the Title IX coordinator if he thought Anderson was not handling the situation appropriately. Cohen also asked that the matter involving Wear be kept private.

Issue #3: Cohen's termination.

Plaintiff contends: Cohen was terminated on or about August 15, 2019. Plaintiff contends that the "Administrative Leave" tag was an after-the-fact decision to protect ASU from Plaintiff's retaliation claims.

Defendant contends:

Cohen was placed on Administrative Leave on August 15, 2019 by ASU's HR Department, in consultation with the Office of General Counsel, after Anderson had informed Cohen that he was terminated. Defendant contends that Cohen was formally terminated on December 14, 2019.

**Defendant's Issues of Fact**

Issue #1: Cohen's insubordination.

Plaintiff contends: In response to Cohen's refusal to let Wear's conduct go unaddressed, Cohen was informed during a meeting between him, Anderson, and Ferrara

that he would begin reporting to Ferrara. Cohen was unhappy by this news, in large part because Ferrara had previously informed Cohen that if Cohen ever had to report to him, he would fire Cohen the very next day. Cohen behaved professionally during the meeting and expressed he would do whatever he had to do in order to keep his job. Cohen also told Anderson he felt that the change was retaliation for his refusal to let go of the inaction surrounding Wear. After the meeting, Cohen approached Ferrara and spoke with him privately and expressed his frustrations. He spoke with Ferrara again three mornings later to apologize for his frustration over the re-structuring and express his vision and "strategic plan" for the future of the athletics program. Ferrara has described the conversation as a "positive interaction." After this conversation, Ferrara attempted to dissuade Anderson from terminating Cohen, but to no avail.

Defendant contends: As part of organizational changes at ASU, Cohen's reporting line for ticketing was changed from Anderson to Ferrara, and such change had nothing to do with Bart Wear. Cohen responded poorly to the change, was insubordinate, and refused to report to Ferrara. Ferrara's statement that he would fire Cohen (made on July 5, 2019) was made in jest and Ferrara did not have the authority to fire Cohen in any event. The change in reporting on ticketing to Ferrara did not give Ferrara the authority or ability to fire Cohen.

Issue #2: Cohen's job performance.

Plaintiff contends: Cohen consistently performed his job duties during his tenure at ASU in a satisfactory, above average performance level. Many individuals employed by or associated with ASU have positive opinions of Cohen's performance as an employee of ASU. While Cohen was not perfect in every aspect of his job, he was a valuable member of ASU's Athletic Department and was awarded sizable bonuses every year he was employed at ASU.

Defendant contends: Although Cohen was good at certain aspects of his job, most notably his administration of the basketball program, throughout his tenure at ASU, Cohen struggled with certain aspects of his job. He struggled with interpersonal

relationships: he had challenges with co-workers and coaches who found him inappropriate and disrespectful. He also struggled with driving ticket sales for football and complying with ASU policy. See also Defendant's contention in Issue #1.

Issue #3: Cohen's removal as administrator over swimming and diving.

Plaintiff contends: In May 2019, Cohen asked Anderson about the status of the Wear investigation. Cohen grew upset after he was told that the investigation had not begun, especially since Anderson and Wear had recently travelled together to go golfing. Following this confrontation, Cohen began to complain to others that nothing was being done about Wear. In direct response to Cohen's persistent attempts to ensure the sexual harassment complaints were handled appropriately, Cohen was removed as administrator for swimming and diving during his June 2019 review.

Defendant contends: During his June 2019 review, Cohen was removed as administrator for swimming and diving so that he could pay more attention to ticketing due to a budget shortfall of millions of dollars related to football ticket sales. Cohen's co-administrator (Garner-Smith) and the diving coach also requested Cohen be removed from swimming and diving because of interpersonal challenges and the lack of focus he was giving to the program. Cohen acknowledges he paid more attention to basketball than swimming and diving.

Issue #4: Cohen's change in reporting to Ferrara for ticketing.

Plaintiff contends: Cohen was informed during a meeting between him, Anderson, and Ferrara that he would begin reporting to Ferrara. Ferrara had previously informed Cohen that if Cohen ever had to report to him, he would fire Cohen the very next day. Prior to this change, Ferrara was a Senior Athletic Director, which was the same position Cohen held. The two were equal in position and reporting hierarchy. When Cohen was made to report to Ferrara, he was functionally told that his new supervisor (for reporting purposes) was his equally ranked coworker. In that regard, Plaintiff no longer would report to Anderson on men's basketball.

Defendant contends: Cohen worked well with Ferrara and was on friendly terms with him. Ferrara was the CFO of the Athletic Department; he was part of Anderson's leadership team and well-positioned to oversee ticketing sales for the Athletic Department. Cohen was not demoted, his title did not change, and his compensation did not change (indeed, Cohen received a salary increase). Cohen continued to have a direct report to Anderson on men's basketball, a major revenue sport. Per Cohen's offer letter, he was to report to Andrson or Anderson's "designee."

Issue #5: Causal link between the reporting of the Wear allegations and Cohen's termination

Plaintiff contends: Cohen was terminated as retaliation for reporting Wear's sexual harassment, then continuing to demand action upon ASU's inaction. For years, Cohen received sizable bonuses and performed his job duties to the best of his abilities. The only difference between the year he was demoted, placed on leave, then fired and his previous years of working was his various reports of Wear's sexual harassment and demands for accountability. Any reasons given by Defendant for these actions are pretextual and untrue. But even if they were true, they did not arise for the first time in 2019 and thus Cohen's insistence on accountability would have been the actual reason. Plaintiff contends that Defendant's purported reasons for his termination are pretext for what actually occurred: retaliation.

Defendant contends: Cohen's termination was a result of Cohen's insubordination, coupled with the accumulation of challenges Anderson had been dealing with throughout Cohen's tenure at ASU: the reports of inappropriate expense, the conflict of interest from taking money from a vendor, the Pac-12 reprimand, the disrespectful treatment of colleagues, the failed efforts at executive coaching, the complaints from coaches, and his refusal to accept Anderson's organizational restructuring.

**Plaintiff's Issues of Law**

Issue #1:  Whether Plaintiff's belief that Wear's conduct was unlawful and in violation of Title VII was reasonable.

Plaintiff contends:

Plaintiff was required by ASU policy to report all instances of sexual harassment and did so when he first raised the issue with Anderson. Plaintiff's trainings did not draw distinctions between assaults based on the identities of the victims – rather Plaintiff understood that harassment involving employees, students, or other members of the ASU community was unlawful and needed to be reported. Furthermore, Plaintiff knew another prominent donor had been reprimanded for acting inappropriately towards women in the ASU community. Plaintiff was trained and instructed that any failure to report sexual assault or harassment could result in his termination, but that he would be shielded from retaliation for any reports he did make.

Defendant contends: Protected activity under the statute requires that they employee oppose a practice that is "made an unlawful employment practice" by the statute. Plaintiff must establish that he had a reasonable belief that Defendants engaged in an unlawful practice under the statute. There is no evidence to establish any reasonable basis for Plaintiff to have believed that an unlawful practice had occurred, among other reasons, because Wear's victims are not statutorily protected persons, and any belief Plaintiff may have had regarding the community at large cannot as a matter of law constitute opposition to an unlawful employment practice. In addition, as a matter of fact, Plaintiff's asserted grounds for reporting are inconsistent with the evidence and Plaintiff's deposition testimony.

Issue #2: Whether employers are liable for the behavior of non-employees.

Plaintiff contends:

"Employers are liable for harassing conduct by non-employees 'where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct." *See Freitag v.*

*Ayers*, 468 F.3d 528, 538 (9th Cir. 2006) (quoting *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997)). It is undisputed that Defendants had actual knowledge of Wear's conduct in March 2019. *See* Uncontested Issues of Law above. It is further undisputed that Defendants did not conduct an investigation into Wear's conduct until August 2019, half a year later. Thus, ABOR ratified Wear's conduct and created an unlawful employment practice and Title VII liability.

Defendant contends: This is not at issue in this case. Cohen has not pled or disclosed claims that ABOR is liable for the conduct of Bart Wear. Nor could he assert such claims, because he would lack standing; such claims would have to be pursued by victims of alleged ratified conduct. Instead, what is at issue is whether Defendant retaliated against Cohen for an unlawful reason. *See* Doc. 99, at 18 n. 2 (Court's order on summary judgment motion provides that "evidence regarding Wear's sexual misconduct is not material in this case."). In any event, to the extent Plaintiff is arguing that the University is responsible for Wear's conduct under ratification principles, there is no evidence supporting any such assertion, and, moreover, this would be a factual question, not a question of law. Finally, to the extent Plaintiff is suggestion that the alleged "ratification" itself is an unlawful practice under Title VII or Title IX, that claim fails as a matter of law and fact in this case, among other reasons, because Plaintiff has neither pled nor disclosed (and the evidence does not support) that he reported alleged ratification. To the contrary, the evidence in the case is inconsistent with any such claim.

Issue #3: Whether Plaintiff's belief that Wear's conduct was unlawful and in violation of Title IX was reasonable.

Plaintiff contends:

As in Title VII, opposition may constitute protected activity if the complainant reasonably believed the conduct at issue was unlawful. *See* Doc. 23, citing *Grabowski v. Ariz. Bd. of Regents*, No. CV-19-00460-TUC-SHR, 2022 WL 1128936, at *3 (D. Ariz. Apr. 15, 2022). Title IX's prohibition against gender discrimination in education protects students and employees of the educational institution. N. Haven Bd. of Educ. v. Bell,

456 U.S. 512, 540 (1982). Again, Plaintiff's trainings generally did not draw distinctions between assaults based on the identities of the victims – rather Plaintiff understood that harassment involving employees, students, or other members of the ASU community was unlawful and needed to be reported. Plaintiff knew another prominent donor had been reprimanded for acting inappropriately towards women in the ASU community. Mr. Wear's sexual harassment occurred at ASU athletic events where both students and employees were present. Plaintiff complained not just to make sure Wear was held accountable, but also to protect other members of the ASU community—including both students and employees—from future harassment. Plaintiff reasonably believed he was reporting conduct prohibited by Title IX.

Defendant contends: As above, as a matter of law, Plaintiff cannot establish that he had a reasonable belief that an unlawful employment practice under the statute had occurred, because Wear's victims are not covered by Title IX and reports based on concern for others in the community in the future do not constitute opposition to an unlawful practice. In addition, as a matter of fact, Plaintiff's stated grounds for reporting are inconsistent with the evidence and Plaintiff's deposition testimony.

**Defendant's Issues of Law**

Issue #1: Whether Plaintiff's act of reporting sexual assault by a donor on three non-student attendees at a university athletic event constituted "protected activity" under Title VII.

Plaintiff contends:

"An employee engages in protected activity when [they] oppose[] an employment practice that either violates Title VII or that the employee reasonably believes violates that law." *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013); *see also* 42 U.S.C. § 2000e-3(a). Informal as well as formal complaints or demands are protected activities under Title VII. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000). Such complaints include those relating to sexual harassment. *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th

Cir. 2000) ("employees who are subject to adverse employment actions because they lodged complaints of sexual harassment can raise a retaliation claim under Title VII"). Wear was given access to special VIP seating – often reserved for ASU staff, family, and prominent donors. Defendant's failure to properly remove Wear from athletic events also created a hostile work environment for employees. For example, Bobby Hurley, the head coach of ASU's Men's Basketball team, was shocked and upset when Wear appeared for a game months after Cohen was terminated the first time/put on leave.

      Defendant contends:

      Cohen's report of sexual assault by a donor against three non-students is not a "protected activity" under Title VII, which protects opposition to unlawful *employment practices*. None of the individuals involved were employees of the university. Therefore, Cohen could not have formed a reasonable, good faith belief that he was opposing conduct that violated Title VII, as it did not concern the terms, conditions, or privileges of his or anyone else's employment, nor did it contribute to a hostile work environment for employees. In fact, Cohen testified that it was never his intention to have Wear disassociated from ASU, and he was not seeking formal action or investigation of Wear when he spoke to Anderson in March 2019 regarding Wear.

      <u>Issue #2</u>: Whether Plaintiff's act of reporting sexual assault by a donor on three non-student attendees at a university athletic event constituted "protected activity" under Title IX.

      Plaintiff contends:

      Cohen's desire to have the threat of further Wear sexual misconduct was aimed at protecting both the public and the ASU community, including students and employees. Wear's status as a donor gave him elevated access to ASU employees – Cohen and Anderson themselves are proof, as Wear had direct lines of communication to both. Wear was actively involved in attending ASU sporting events, which are heavily populated by ASU students. While Cohen was concerned about his wife and the other

two victims, his desire to see Wear properly investigated and held responsible was not limited to those three women.

Defendant contends:

Title IX's prohibition against gender discrimination in education protects *students and employees* of the educational institution. *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 540 (1982). This Court's Order on ABOR's Motion to Dismiss cited *N. Haven Bd. of Educ.* for this principle and found that, "[f]or purposes of the [motion to dismiss]," Cohen had adequately alleged that his "complaints about Mr. Wear's conduct were . . . aimed at not only seeking redress for Mr. Wear's actions against the three existing victims, but also to protect other members of the ASU community." [Doc. 23 at 15:10-20.] But Cohen testified that he did *not* believe (reasonably or otherwise) that Mr. Wear's actions were prohibited by Title IX and he never sought to have Mr. Wear disassociated from ASU.  His report, therefore, was not aimed at protecting students or employees and was not protected by Title IX.

Issue #3: Whether being removed as administrator for swimming and diving and having his reporting lines changed constituted an adverse employment action

Plaintiff contends: Adverse employment actions take many forms. Ninth Circuit Model Civil Jury Instructions § 10.10, Comment. An adverse action in the context of a retaliation claim need not materially affect the terms and conditions of employment so long as a reasonable employee would have found the action materially adverse. *Id*.; *see also* Poland v. Chertoff, 494 F.3d 1174, 1180 (9th Cir. 2007) ("An adverse employment action is any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity"). The Ninth Circuit has previously held that when an employee's "complaints affected a performance review she received and resulted in decreased job responsibilities[,]" the employee had suffered adverse employment actions. *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000); *see also Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (holding transfer of job duties and "undeserved"

performance ratings were adverse employment actions); *Strother v. Southern California Permanente Group*, 79 F.3d 859, 869 (9th Cir.1996) (exclusion from meetings, denial of administrative support, and transfer of duties deemed retaliatory).Defendant contends: These do not meet the definition of "adverse employment action" under either Title VII or Title IX. "A tangible employment action in most cases inflicts direct economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 7623 (1998), "Changes in duties or working conditions that cause no materially significant disadvantage" do not constitute adverse employment actions under Title VII. *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) (citing *Crady v. Liberty Nat'l Bank and Trust Co.,* 993 F.2d 132, 135-36 (7th Cir.1993)).

Defendant contends: Changes in duties or working conditions that cause no materially significant disadvantage (i.e., changes that do not diminish an employee's title, salary, or benefits) do not constitute "adverse employment actions" for the purpose of a retaliation claim. *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994). Also, changes that were implemented (or were part of a process that began to be implemented) "well before the plaintiff had ever engaged in any protected activity" do not give rise to an inference of retaliation. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

### E.    LIST OF WITNESSES

Each party shall separately list the names of witnesses, their addresses, whether they are fact or expert witnesses, and a brief description of the testimony of each witness. The witnesses shall be grouped as follows: (a) witnesses who shall be called at trial, (b) witnesses who may be called at trial; and (c) witnesses who are unlikely to be called at trial. Additionally, the parties shall include the following text in this section of the Proposed Final pretrial Order: "Each party understands that it is responsible for ensuring that the witnesses it wishes to call to testify are subpoenaed. Each party further understands that any witness a party wishes to call shall be listed on that party's list of

witnesses; the party cannot rely on the witness having been listed or subpoenaed by another party."

**Plaintiff's Witnesses**

Witnesses who will be called at trial:

1.    David Cohen
      c/o 600 B St., Suite 2100
      San Diego, CA 92101

Cohen will testify about his employment and job performance, his enjoyment of the job, the victims' notifying him of Wear's sexual misconduct, his initial report to Anderson, his follow-up requests and demands for action/complaints over inaction to others, the adverse employment actions taken against him, the events of August 2019, his employment since his eventual termination, and will provide counter-testimony to Defendants' allegations regarding his alleged bad acts.

2.    Raymond Anderson
      c/o Papetti Samuels Weiss McKirgan LLP
      15169 N. Scottsdale Rd., Suite 205
      Scottsdale, AZ 85254

Anderson will testify about Cohen, Cohen's reports of sexual harassment, his initial reaction to the report, Cohen's growing frustrations over inaction, Anderson's travel with Bart Wear, the various retaliatory actions taken against Cohen, the events of August 2019.

3.    Bobby Hurley
      c/o Papetti Samuels Weiss McKirgan LLP
      15169 N. Scottsdale Rd., Suite 205
      Scottsdale, AZ 85254

Hurley will testify about Cohen's job performance, his reputation and relationships with his coworkers and others associated with ASU, Cohen's handling of Wear's sexual harassment, Cohen's frustrations over inaction by Defendant and others, the adverse actions taken against Cohen, continued inaction by Defendant after August 2019, Wear's presence at a subsequent game, and Anderon's response(s) to criticism.

    4.       Scott Nelson
           c/o Papetti Samuels Weiss McKirgan LLP
           15169 N. Scottsdale Rd., Suite 205
           Scottsdale, AZ 85254

Nelson will testify about Cohen's employment and job performance, Cohen's enjoyment of the job, the victims' notifying Cohen of Wear's sexual misconduct, Cohen's initial report to Anderson, his follow-up requests and demands for action/complaints over inaction to others, the adverse employment actions taken against Cohen, the events of August 2019, and will provide counter-testimony to Defendants' allegations regarding Cohen's alleged bad acts.

    5.       Rick Shangraw
           c/o Papetti Samuels Weiss McKirgan LLP
           15169 N. Scottsdale Rd., Suite 205
           Scottsdale, AZ 85254

Shangraw will testify about Cohen's employment and job performance, Cohen's enjoyment of the job, the victims' notifying Cohen of Wear's sexual misconduct, Cohen's initial report to Anderson, his follow-up requests and demands for action/complaints over inaction to others, the adverse employment actions taken against Cohen, the events of August 2019, and will provide counter-testimony to Defendants' allegations regarding Cohen's alleged bad acts.

    6.       Frank Ferrara
           c/o Papetti Samuels Weiss McKirgan LLP
           15169 N. Scottsdale Rd., Suite 205
           Scottsdale, AZ 85254

Ferrara will testify about his relationship with Cohen, his job duties and responsibilities, learning of Wear's sexual harassment, Anderson's demand for new reporting by Cohen to Ferrara, the August 12, 2019 meeting and the conversation with Cohen afterwards, and his conversations with Cohen then Anderson on August 15, 2019.

    7.       Kevin Salcido
           c/o Papetti Samuels Weiss McKirgan LLP
           15169 N. Scottsdale Rd., Suite 205
           Scottsdale, AZ 85254

Salcido will testify about Cohen's employment and job performance, Cohen's enjoyment of the job, the victims' notifying Cohen of Wear's sexual misconduct, Cohen's initial report to Anderson, his follow-up requests and demands for action/complaints over inaction to others, the adverse employment actions taken against Cohen, the events of August 2019, and will provide counter-testimony to Defendants' allegations regarding Cohen's alleged bad acts.

8.    Jay Heiler
      c/o Papetti Samuels Weiss McKirgan LLP
      15169 N. Scottsdale Rd., Suite 205
      Scottsdale, AZ 85254

Heiler will testify about Cohen's employment and job performance, Cohen's enjoyment of the job, the victims' notifying Cohen of Wear's sexual misconduct, Cohen's initial report to Anderson, Heiler's conversation with President Crow about Cohen's report and Wear's conduct, Cohen's follow-up requests and demands for action/complaints over inaction to others, the adverse employment actions taken against Cohen, the events of August 2019, and will provide counter-testimony to Defendants' allegations regarding Cohen's alleged bad acts.

9.    Michael Crow
      c/o Papetti Samuels Weiss McKirgan LLP
      15169 N. Scottsdale Rd., Suite 205
      Scottsdale, AZ 85254

President Crow will testify about Cohen's employment and job performance, Cohen's enjoyment of the job, the adverse employment actions taken against Cohen including when he learned of those decisions, and the events of August 2019.

10.    David Weiner (Plaintiff's expert)
       c/o PEREZ VAUGHN & FEASBY Inc.
       600 B St., Suite 2100
       San Diego, CA 92101

Weiner will provide expert testimony regarding damages suffered by Plaintiff and surrounding considerations for damages-purposes.

<u>Witnesses who may be called at trial</u>:

1.    Jean Boyd
      c/o Papetti Samuels Weiss McKirgan LLP
      15169 N. Scottsdale Rd., Suite 205
      Scottsdale, AZ 85254

Boyd will testify about Cohen's employment and job performance, Cohen's enjoyment of the job, the victims' notifying Cohen of Wear's sexual misconduct, Cohen's initial report to Anderson, his follow-up requests and demands for action/complaints over inaction to others, the adverse employment actions taken against Cohen, the events of August 2019, and will provide counter-testimony to Defendants' allegations regarding Cohen's alleged bad acts.

2.    Deana Garner-Smith
      c/o Papetti Samuels Weiss McKirgan LLP
      15169 N. Scottsdale Rd., Suite 205
      Scottsdale, AZ 85254

Garner-Smith will testify about Cohen's employment and job performance, Cohen's enjoyment of the job, the victims' notifying Cohen of Wear's sexual misconduct, Cohen's initial report to Anderson, his follow-up requests and demands for action/complaints over inaction to others, the adverse employment actions taken against Cohen, the events of August 2019, and will provide counter-testimony to Defendants' allegations regarding Cohen's alleged bad acts.

3.    Jodi Preudhomme
      c/o Papetti Samuels Weiss McKirgan LLP
      15169 N. Scottsdale Rd., Suite 205
      Scottsdale, AZ 85254

Preudhomme will testify about Cohen's employment and job performance, Cohen's enjoyment of the job, the victims' notifying Cohen of Wear's sexual misconduct, Cohen's initial report to Anderson, his follow-up requests and demands for action/complaints over inaction to others, the adverse employment actions taken against

Cohen, the events of August 2019, and will provide counter-testimony to Defendants' allegations regarding Cohen's alleged bad acts.

    4.    Herm Edwards
           c/o Papetti Samuels Weiss McKirgan LLP
           15169 N. Scottsdale Rd., Suite 205
           Scottsdale, AZ 85254

Edwards will testify about Cohen's employment and job performance, Cohen's enjoyment of the job, Anderson's relationship to Bart Wear, the trip to Pebble Beach with Anderson and Wear after the sexual harassment occurred, and he will provide counter-testimony to Defendants' allegations regarding Cohen's alleged bad acts.

    5.    Rebecca Nemmers
           c/o Papetti Samuels Weiss McKirgan LLP
           15169 N. Scottsdale Rd., Suite 205
           Scottsdale, AZ 85254

Nemmers will testify about Cohen's employment and job performance, Cohen's enjoyment of the job, the victims' notifying Cohen of Wear's sexual misconduct, Cohen's initial report to Anderson, his follow-up requests and demands for action/complaints over inaction to others, the adverse employment actions taken against Cohen, the events of August 2019, and will provide counter-testimony to Defendants' allegations regarding Cohen's alleged bad acts.

    6.    Leslie Hurley
           c/o Mitchell Stein
           1 Renaissance Square, Suite 1450
           Phoenix, AZ 85004

Hurley will testify about Cohen's employment and job performance, Cohen's enjoyment of the job, the victims' notifying Cohen of Wear's sexual misconduct, Cohen's initial report to Anderson, his follow-up requests and demands for action/complaints over inaction to others, the adverse employment actions taken against Cohen, the events of August 2019, and will provide counter-testimony to Defendants'

allegations regarding Cohen's alleged bad acts, especially as to the reason for Cohen's short delay in reporting to Anderson the sexual harassment allegations.

      7.     Kathy Cohen
           c/o PEREZ VAUGHN & FEASBY Inc.
           600 B St., Suite 2100
           San Diego, CA 92101

Kathy Cohen will testify about David Cohen's employment and job performance, David Cohen's enjoyment of the job, the victims' notifying David Cohen of Wear's sexual misconduct, David Cohen's initial report to Anderson, his follow-up requests and demands for action/complaints over inaction to others, the adverse employment actions taken against David Cohen, the events of August 2019, and will provide counter-testimony to Defendants' allegations regarding Cohen's alleged bad acts, especially as to the reason for David Cohen's short delay in reporting to Anderson the sexual harassment allegations.

      Brief description of testimony

      <u>Witnesses who are unlikely to be called at trial</u>:

      1.     Lindsey Wood
           c/o Papetti Samuels Weiss McKirgan LLP
           15169 N. Scottsdale Rd., Suite 205
           Scottsdale, AZ 85254

Wood will testify about Cohen's employment and job performance, Cohen's enjoyment of the job, the victims' notifying Cohen of Wear's sexual misconduct, Cohen's initial report to Anderson, his follow-up requests and demands for action/complaints over inaction to others, the adverse employment actions taken against Cohen, the events of August 2019, and will provide counter-testimony to Defendants' allegations regarding Cohen's alleged bad acts, especially as to the reason for Cohen's short delay in reporting to Anderson the sexual harassment allegations.

**Defendant's Witnesses**

<u>Witnesses who will be called at trial</u>:

1.    Ray Anderson
      c/o Papetti Samuels Weiss McKirgan LLP
      16430 North Scottsdale Road, Suite 290
      Scottsdale, AZ 85254

Anderson will testify about Cohen's reporting of the Wear allegations, Cohen's

workplace performance, Cohen's interactions with colleagues and coaches, Cohen's

performance reviews, Cohen's violations of University policy, Cohen's removal from

swimming and diving administrator, the discretionary nature of Cohen's annual bonus,

Cohen's change in reporting line for ticketing, Cohen's Pac-12 reprimand, efforts to

modify Cohen's behavior in the workplace, Cohen's insubordination and the reasons

why he terminated Cohen, the decision to put Cohen on paid administrative leave

following Cohen's allegations of retaliation, the independent investigation and its

conclusions, and the decision to formally terminate Cohen's employment in December

2019, and Cohen receiving a $690,000 payment from Vivid Seats, an ASU vendor.

2.    Frank Ferrara
      c/o Papetti Samuels Weiss McKirgan LLP
      16430 North Scottsdale Road, Suite 290
      Scottsdale, AZ 85254

Ferrara will testify about the budget shortfall related to football ticket sales,

Cohen's workplace performance, his prior interactions with Cohen while with the

Atlanta Falcons, Cohen's interactions with colleagues, Cohen's performance review in

June 2019, Cohen's response to the change in reporting line for ticketing, and his

interactions and relationship with Cohen, including his alleged comment related to firing

Cohen, and his discovery of a $690,000 payment to Cohen made by Vivid Seats, an ASU

vendor.

3.    Jean Boyd
      c/o Papetti Samuels Weiss McKirgan LLP
      16430 North Scottsdale Road, Suite 290
      Scottsdale, AZ 85254

Boyd will testify about Cohen's workplace performance, Cohen's interactions with colleagues, Cohen's performance review in June 2019, Cohen's statements related to the Wear allegations and reporting to Anderson, Cohen's reaction to his change in reporting on ticketing, and his recommendation to Cohen to report the Wear conduct to the Deputy Title IX coordinator.

      4.      Sandy Hatfield-Clubb
                The Pictor Group
                PO Box 19942
                Reno, NV 89511

Hatfield-Clubb will testify about the culture assessment she conducted at Anderson's direction. She'll testify about the interviews she conducted with Cohen and others within the Athletic Department, including the survey questions she asked the individuals she interviewed. Hatfield-Clubb will testify about her impressions of Cohen based on her observations of him in the workplace and her executive coaching of Cohen. She will testify about information she relayed to Anderson about Cohen. She will also testify about the results of the culture assessment and the overall recommendations related to the organization, including any restructuring, as relayed to the Athletic Department.

      5.      Deana Garner-Smith
                c/o Papetti Samuels Weiss McKirgan LLP
                16430 North Scottsdale Road, Suite 290
                Scottsdale, AZ 85254

Garner-Smith will testify about her interactions with Cohen as co-sports administrator for swimming and diving, including issues involving a coach's complaint regarding Cohen. She will testify about her role as the Deputy Title IX Coordinator for the Athletic Department and the trainings that she helped facilitate for the Athletic Department, including the duty to report.

      6.      Scott Nelson
                c/o Papetti Samuels Weiss McKirgan LLP
                16430 North Scottsdale Road, Suite 290
                Scottsdale, AZ 85254

Nelson will testify about his meeting with Anderson and Cohen in which Cohen first described Wear's conduct to Anderson, Nelson's communications with Rick Shangraw regarding Wear, his interactions and communications with Cohen regarding the Wear conduct, and his communications with Wear that Wear was disassociating himself from ASU athletics.

7.    Kevin Salcido
      c/o Papetti Samuels Weiss McKirgan LLP
      16430 North Scottsdale Road, Suite 290
      Scottsdale, AZ 85254

Salcido, who was ASU's Director of Human Resources at the relevant time period, will testify about Cohen's work performance and interpersonal relationships with others in the athletic department and about the independent investigation into the Wear incident and Cohen's allegations of retaliation.

8.    David Cohen
      c/o Perez Vaughn & Feasby Inc.
      600 B Street, Suite 2100
      San Diego, CA 92101

Cohen will testify about the allegations raised in his Second Amended Complaint, the Wear conduct, his communications with Anderson and other ASU representatives regarding Wear, his relationship with Wear**,** his workplace performance, his communications with Anderson and other ASU representatives regarding the alleged retaliatory acts, investigations into his conduct involving Vivid Seats and excessive alcohol expenses, his Pac-12 reprimand, his prior and future work histories and earnings, and will be cross-examined on issues elicited in his direct testimony.

9.    Jamie Winkler
      Impact Financial Forensics, LLC
      PO Box 655
      Mesa, AZ 85211

Winkler is an expert witness retained by ABOR to provide expert testimony on Cohen's alleged damages.  He will testify to his opinions and basis for his opinions disclosed in his expert report.

<u>Witnesses who may be called at trial</u>:

1.     Bobby Hurley
       c/o Papetti Samuels Weiss McKirgan LLP
       16430 North Scottsdale Road, Suite 290
       Scottsdale, AZ 85254

Hurley will testify about communications with Cohen and Anderson regarding the

Wear conduct.


2.     Jay Heiler
       c/o Papetti Samuels Weiss McKirgan LLP
       16430 North Scottsdale Road, Suite 290
       Scottsdale, AZ 85254

Heiler will testify as to his interactions and communications with Cohen

regarding Wear, including Cohen's request for a referral to an attorney in June 2019.

3.     Amy Schramm
       c/o Papetti Samuels Weiss McKirgan LLP
       16430 North Scottsdale Road, Suite 290
       Scottsdale, AZ 85254

Schramm will testify about her interactions with Cohen as senior associate

athletics director. She will testify about Cohen's work performance and interpersonal

skills. She will testify about her efforts in assisting Anderson to restructure the Athletic

Department's organizational structure and about Cohen's response to how the

reorganization changed one of his reporting lines.

4.     Jim Rund
       c/o Papetti Samuels Weiss McKirgan LLP
       16430 North Scottsdale Road, Suite 290
       Scottsdale, AZ 85254

Rund, who was ASU's Senior Vice President of Educational Outreach and

Student Services at the relevant time period, will testify about Cohen's work

performance and interpersonal relationships with others in the athletic department. Rund

will also testify about conversations he had with Cohen about the Wear incident and

about his termination.

    5.      Rebecca Parke Nemmers
           c/o Papetti Samuels Weiss McKirgan LLP
           16430 North Scottsdale Road, Suite 290
           Scottsdale, AZ 85254

Nemmers will testify about Cohen's work performance and interpersonal relationships with others in the athletic department. She will also testify about conversations she had with Cohen about the Wear incident and his termination.

    6.      Jodi Preudhomme
           c/o Papetti Samuels Weiss McKirgan LLP
           16430 North Scottsdale Road, Suite 290
           Scottsdale, AZ 85254

Preudhomme will testify about her role as Title IX Coordinator for the Athletic Department and the trainings that she helped facilitate for the Athletic Department, including the duty to report.

    7.      Dr. Michael Crow
           c/o Papetti Samuels Weiss McKirgan LLP
           16430 North Scottsdale Road, Suite 290
           Scottsdale, AZ 85254

Dr. Crow was deposed in this matter by Cohen and will testify consistently with his deposition.

    8.      Rick Shangraw
           c/o Papetti Samuels Weiss McKirgan LLP
           16430 North Scottsdale Road, Suite 290
           Scottsdale, AZ 85254

Mr. Shangraw will testify to his discussions with Cohen and Anderson regarding Bart Wear.

The Parties shall use best efforts to call in person as many of their listed witnesses as possible.[1]  To the extent witnesses are unavailable to appear in person, the Court will

---

[1] ABOR informs the Court and Plaintiff that certain witnesses are no longer employed or associated with ASU or ABOR.  Specifically, Jean Boyd, Frank Ferrara, Rick Shangraw, Rebecca Nemmers, and Amy Schramm have either retired or left ASU.  James Heiler is no longer a member of ABOR.  Boyd, Ferrara and Shangraw no longer live in Arizona. As of the filing of this Proposed Joint Pretrial Order, counsel for ABOR has not received

allow the witness to appear by video.  It is highly recommended that a pretest be scheduled between AV Support and the witness to avoid any delays at trial which will be counted against your time. Please contact Judge Snow's Courtroom Deputy Kathleen Zoratti at kathleen zoratti@azd.uscourts.gov to schedule.

**F.      LIST OF EXHIBITS**

See Trial Exhibit Index, attached hereto as Exhibit A.

The parties shall contact Judge Snow's Courtroom Deputy two weeks in advance to schedule a time for exhibits to be provided to the Court no later than Noon two weeks before trial.

**G.      DEPOSITIONS TO BE OFFERED**

The parties shall list the depositions that may be used at trial. The portions to be read or submitted at trial shall be identified by page and line number. Additionally, the party offering the deposition shall provide the Court with a copy of the offered deposition testimony. The offering party shall highlight, in color, the portions of the deposition to be offered. If multiple parties are offering the same deposition, only one copy of such deposition shall be provided. Such copy shall contain each party's highlighting (each party should use a different color).

The parties shall include the following text in this section of the joint Proposed Final Pretrial Order: "Each party hereby acknowledges by signing this joint Proposed Final Pretrial Order that any deposition not listed as provided herein will not be allowed, absent good cause."

See Deposition Designation Index, attached hereto as Exhibit B[2].

---

commitments to attend trial (either live or by video) from Jay Heiler, Rick Shangraw, Jean Boyd, and Amy Schramm.

[2] The parties hereby inform the Court that they intend to offer deposition testimony to the extent the witness is not available to testify in person or by video.

## H.    MOTIONS IN LIMINE (JURY TRIAL)

1.      Plaintiff's Motion in Limine No. 1 to Exclude Testimony Regarding Plaintiff's Divorce

2.      Plaintiff's Motion in Limine No. 2 to Exclude Testimony and Evidence RE: Sandy Hatfield Clubb

3.      Plaintiff's Motion in Limine No. 3 to Exclude Testimony and Evidence RE: Armstrong Teasdale Investigation Findings and Report

4.      Plaintiff's Motion in Limine No. 4 to Exclude Evidence and Testimony RE: Vivid Seats

5.      Plaintiff's Motion in Limine No. 5 to Exclude Evidence and Testimony RE: Plaintiff's Private Financial Documents, including but not limited to those taken from Plaintiff's office after August 15, 2019.

6.      ABOR's Motion in Limine No. 1 to Exclude Testimony Regarding Retaliation Allegations

7.      ABOR's Motion in Limine No. 2 to Exclude Independent Investigator's Raw Notes and Deposition Testimony Elicited Therefrom

8.      ABOR's Motion in Limine No. 3 to Admit Armstrong Teasdale's Final Report

9.      ABOR's Motion in Limine No. 4 to Exclude Irrelevant and Prejudicial Evidence Re Bart Wear

10. ABOR's Motion in Limine No.5 to Exclude Hearsay Testimony Related to Plaintiff's Efforts to Secure Employment in Sports Industry

## I.    LIST OF PENDING MOTIONS

1.      ABOR's Motion to Exclude Plaintiff's Damages Expert (Doc. 117)


## J.    PROCEDURES FOR EXPEDITING TRIAL

The parties shall discuss and report on all available procedures that might be used to expedite trial, including but not limited to (a) presenting stipulated summaries of

deposition testimony rather than reading deposition excerpts; (b) editing videotaped depositions to limit the amount of time required for presentation; (c) using summary exhibits in place of voluminous documentary evidence; (d) stipulations on authenticity and foundation; (e) presenting direct expert testimony through summary or written reports; (f) using the courtroom technology to expedite the presentation of evidence. The parties are invited to contact the Courtroom Deputy at Kathleen_Zoratti@azd.uscourts.gov to arrange a time to visit the courtroom and examine its technology. Information about courtroom technology can also be found at www.azd.uscourts.gov under Judges and Courtrooms and Orders, Forms and Procedures.

**K.    ESTIMATED LENGTH OF TRIAL**

2 hours for jury selection

4 hours for opening statements and closing arguments

___ hours for Plaintiff's case

___ hours for Defendants' case

___ hours for rebuttal

The parties disagree over the allocation of time. In addition to Plaintiff's case in chief, Plaintiff requests 6 hours for a rebuttal case.  Defendant's position is that evidentiary time should be allocated evenly; specifically, that each side shall be given an equal amount of time to question witnesses and put on evidence regardless of whether such time is incurred in Plaintiff's or Defendant's cases in chief or in any rebuttal case.

**L.    JURY DEMAND**

State whether a jury trial has or has not been requested. If a jury trial has been requested, indicate the appropriate selection:

1.    The parties stipulate that the request was timely and properly made.

2.    The award of any back or front pay is an equitable remedy and will be decided by the Court.

### M.   PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR BENCH TRIALS

Plaintiff's proposed findings and conclusion as to the non-jury issues are attached as Exhibit C.

ABOR's proposed findings and conclusion as to the non-jury issues are attached as Exhibit D.

### N.   JOINT PROPOSED JURY INSTRUCTIONS, JOINT PROPOSED VOIR DIRE QUESTIONS, AND PROPOSED FORMS OF VERDICT FOR JURY TRIALS

See Parties Joint and Unopposed Motion to Modify Deadline for Submission of Jury Instructions and Verdict Forms.

### O.   CERTIFICATIONS

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1.   All discovery has been completed.[3]

2.   The identity of each witness has been disclosed to opposing counsel. The parties acknowledge their witness list is complete.

3.   Each exhibit listed herein: (1) is in existence; (2) is numbered; (3) has been disclosed and shown to opposing counsel. Each party hereby acknowledges that any objections to an exhibit not specifically raised in the joint Proposed Final Pretrial Order is waived.

4.   Each party acknowledges that any deposition not listed in the Proposed Final Pretrial Order will not be allowed, absent good cause.

5.   The parties have complied in all respects with the mandates of the Court's Rule 16 Scheduling Order and Order Setting Final Pretrial Conference.

---

[3] Plaintiff seeks to depose ABOR's damages expert, which is scheduled to take place on November 13, prior to the Final Pretrial Conference.

6.      The parties have made all of the disclosures required by the Federal Rules of Civil Procedure (unless otherwise previously ordered to the contrary).[4]

7.      The parties acknowledge that once the Proposed Final Pretrial Order was signed and lodged by the parties, no amendments to this Order can be made without leave of Court.

**P.      INFORMATION FOR COURT REPORTER**

In order to facilitate the creation of an accurate record, the parties shall file a "Notice to Court Reporter" **two weeks before trial** containing the following information to be used at trial:

1.      Proper names, including those of witnesses

2.      Acronyms

3.      Geographic locations

4.      Names of any companies discussed in the case

5.      Technical (including medical) terms, names or jargon

6.      Case names and citations

7.      Pronunciation of unusual or difficult words or names

8.      Counsel will advise Judge Snow's Court Reporter two weeks prior to trial if counsel would like to receive a real-time feed or daily turnaround or any expedited transcript during any of the proceedings. This will ensure the proper paperwork is in place and arrangements made for a real-time test run **before** the actual proceeding. No real-time feed will be facilitated the day of trial.

In addition, the parties shall provide to the Court Reporter a copy of the concordance from key depositions **two weeks prior to trial**.

---

[4] ABOR has requested that Plaintiff supplement production of documents related to Plaintiff's recent income history, specifically, his 2022, 2023 and 2024 tax returns and 2025 pay stubs. Plaintiff has agreed; that supplementation has not yet occurred.

Dated this 7th day of November, 2025.

PEREZ VAUGHN & FEASBY INC.

/s/ *Michael J. Pérez*
Michael J. Pérez

Jeffrey A. Feasby
Evan C. Flores

MILLER, PITT, FELDMAN & MCANALLY P.C.

José de Jesús Rivera

*Attorneys for Plaintiff*


PAPETTI SAMUELS WEISS MCKIRGAN LLP

/s/ *Robert McKirgan*
Robert McKirgan
Lawrence A. Kasten
Jennifer Lee-Cota
Heather Robles

*Attorneys for Defendants*

Exhibits:

A  Trial Exhibit List

B  Deposition Designations

C  Plaintiff's Proposed Findings of Fact and Conclusions of Law

D  Defendant's Proposed Findings of Fact and Conclusions of Law

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of November, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael J. Pérez
Jeffrey A. Feasby
Evan C. Flores
Marissa S. Denison
Pérez Vaughn & Feasby Inc.
600 B Street, Ste. 2100
San Diego, CA 92101
perez@pvflaw.com
rowlett@pvflaw.com

José de Jesús Rivera
Miller, Pitt, Feldman & McAnally P.C.
2800 N. Central Ave., Ste. 1400
Phoenix, AZ 85004
jrivera@mpfmlaw.com

*Attorneys for Plaintiff*

/s/ Michael J. Pérez

**EXHIBIT A**

**EXHIBIT A**

*ABOR adv. Cohen*

**Plaintiff's Potential Trial Exhibits**

| <u>TX</u> | <u>Description</u> | <u>Bates Nos.</u> | <u>Objections</u> |
|---|---|---|---|
| 1. | David Cohen's offer letter from ASU (DX002) | ABOR.COHEN000006 | |
| 2. | Email to David Cohen regarding pay increase for 2017 (DX008) | ABOR.COHEN000007 | |
| 3. | David Cohen's paystubs showing annual bonuses for 2017, 2018, and 2019 | ABOR.COHEN000009; ABOR.COHEN000023; ABOR.COHEN000029 | |
| 4. | Letter to David Cohen regarding bonus for 2017 | ABOR.COHEN000012 | |
| 5. | David Cohen's CV | ABOR.COHEN000017-18 | |
| 6. | Email with letter to David Cohen regarding bonus for 2014 (DX006) | ABOR.COHEN000021 | |
| 7. | Letter to David Cohen regarding bonus for 2015 (DX007) | ABOR.COHEN000022 | |
| 8. | Email to David Cohen regarding pay raise for 2018 (DX013) | ABOR.COHEN000026 | |
| 9. | David Cohen's annual evaluation for 2018 (DX011) | ABOR.COHEN000027-28 | |
| 10. | ASU letter from 2019 regarding amendment to David Cohen's original offer letter (DX018) | ABOR.COHEN000031 | |
| 11. | Letter to David Cohen regarding bonus for 2019 (DX016) | ABOR.COHEN000032 | |
| 12. | Email to David Cohen regarding pay raise for 2019 (DX017) | ABOR.COHEN000033 | |
| 13. | David Cohen's annual evaluation for 2019 (DX015) | ABOR.COHEN000034-35 | |
| 14. | Letter from PVF regarding David Cohen and Notice of Claims | ABOR.COHEN000036-44 | FRE 802 |
| 15. | Email from David Cohen re MBB Staffing to Ray Anderson and Ken Landphere (DX037) | ABOR.COHEN002022 | |
| 16. | Letter from PVF to President Crow regarding David Cohen's termination | ABOR.COHEN000045-52 | FRE 802 |
| 17. | ASU Anti-Harassment Policy | ABOR.COHEN001036-43 | FRE 402; 403 |
| 18. | Email from Bobby Hurley to Ray Anderson regarding Bart Wear's attendance at ASU basketball game following investigation (DX033) | ABOR.COHEN003067-68 | FRE 402; 403 |
| 19. | Text thread between David Cohen and Bart Wear | COHEN000361-384 | |
| 20. | Emails between Frank Ferrara and Ray Anderson regarding David Cohen's bonus for 2017 (DX014) | ABOR.COHEN000011 | |
| 21. | Letter to David Cohen regarding bonus for 2016 (DX058) | ABOR.COHEN001134 | |

1

| TX | Description | Bates Nos. | Objections |
|---|---|---|---|
| 22. | Voicemail from "Dr Michael" re Bart Wear (DX034) | ABOR.COHEN003181-3182 | FRE 402; 403 |
| 23. | Email from Ray Anderson to "Head Coaches" re changes to contracts for 2018 with attachments (DX035) | ABOR.COHEN002001-2004; ABOR.COHEN001268-1269 | FRE 402; 403 |
| 24. | Letter to David Cohen regarding amendment to annual bonus structure | ABOR.COHEN001932 | |
| 25. | David Cohen's text thread with Bill Walton regarding Cohen's contributions to ASU basketball | COHEN_000534 | FRE 802 |
| 26. | David Cohen's text thread with Bobby Hurley regarding Bart Wear's conduct | COHEN_000654 | FRE 802; 402; 403 |
| 27. | David Cohen's text threat with Brad Chandler regarding Scott Nelson's "handling" of Bart Wear situation | COHEN_000716 | FRE 802; 402; 403 |
| 28. | David Cohen's Offer Letter – Fully Executed | No Bates Stamp (Produced by Anderson on 4.5.23) | |
| 29. | Team Summary Memorandum (DX045) | ABOR.COHEN003773 | |
| 30. | Letter from 2019 regarding David Cohen's office belongings | ABOR.COHEN003957-8 | |
| 31. | David Cohen's pay summary for 2018 | ABOR.COHEN003971 | |
| 32. | David Cohen's pay summary for 2017 | ABOR.COHEN003973 | |
| 33. | Text from David Cohen regarding dinner plans | ABOR.COHEN002033 | |
| 34. | Text from David Cohen regarding HR meeting | ABOR.COHEN002033-4 | FRE 402; 403 |
| 35. | Text from David Cohen regarding Ray Anderson | ABOR.COHEN002061 | |
| 36. | Email from Sun Devil alum | ABOR.COHEN002360-1 | FRE 802; 402; 403 |
| 37. | Vivid Seats Sponsorship Agreement | ABOR.COHEN002925-39 | |
| 38. | Sponsorship Agreement Amendment | ABOR.COHEN002940-41 | |
| 39. | Vivid Seats email thread with David Cohen | ABOR.COHEN002984 | |
| 40. | Letter regarding Vivid Seats | ABOR.COHEN001027-30 | |
| 41. | David Cohen's annual evaluation for 2015 (DX005) | ABOR.COHEN001125-26 | |
| 42. | Email exchange regarding David Cohen's 2017 bonus | ABOR.COHEN001138 | |
| 43. | ASU Organization Charts | ABOR.COHEN000311-318 | |
| 44. | David Cohen's Position Questionnaire | ABOR.COHEN001161-7 | |

| <u>TX</u> | <u>Description</u> | <u>Bates Nos.</u> | <u>Objections</u> |
|---|---|---|---|
| 45. | Email exchange regarding MBB attendance for 2019 | ABOR.COHEN001258-59 | |
| 46. | Email exchange regarding ASU foundation | ABOR.COHEN001279 | FRE 402 |
| 47. | Email exchange with Deana Garner regarding David Cohen's work (DX095) | ABOR.COHEN001305-6 | |
| 48. | Tweet from Bobby Hurley | ABOR.COHEN001340 | FRE 402 |
| 49. | Text from David Cohen to Jay Heiler regarding HR granting Cohen "protected class" so that Ray cannot fire him | COHEN_002659 | FRE 802 |
| 50. | Text thread between David Cohen and Jay Heiler regarding ASU and Ray Anderson regarding Bart Wear | COHEN_002665-2667 | FRE 802 |
| 51. | Email from Amy Schramm to David Cohen re Amendment to Hurley's contract (DX036) | ABOR.COHEN002000-2015 | FRE 402; 403 |
| 52. | Text thread with David Cohen, Frank Ferrara, and Ray Anderson from 8/8/18 | COHEN_004823 | |
| 53. | Text from Ray Anderson to David Cohen regarding Cohen's "work" on ticket sales (9/9/18) | COHEN_004845 | |
| 54. | Texts from Ray Anderson to David Cohen regarding contract approval and Cohen's bonus for 2018 (awarded 7/2/19) | COHEN_004864-004865 | |
| 55. | Text thread between David Cohen and Scott Nelson regarding Bart Wear's behavior with Kathy Cohen (DX067) | COHEN_005704 | |
| 56. | Text with Ray Anderson regarding 2018 incident, Cohen and Bobby Hurley's daughters at ASU game | COHEN_004836-4837 | |
| 57. | David Weiner's Expert File | | FRE 802; 402; 403 (improper listing; subject to Motion to Exclude) |
| 58. | Letter from David Weiner to PVF regarding expert services re damages (DX096) | | FRE 802; 402; 403 (improper listing; subject to Motion to Exclude) |
| 59. | David Weiner's Summary of Economic Damages for David Cohen (DX097-98) | | FRE 802; 402; 403 (improper listing; subject to Motion to Exclude) |
| 60. | David Weiner's professional summary from JS Held website (DX099) | | FRE 802; 402; 403 (improper listing; subject to Motion to Exclude) |
| 61. | Email thread with David Weiner re retainer for expert services (DX100) | | FRE 802; 402; 403 (improper listing; subject to Motion to Exclude) |
| 62. | Email thread with David Weiner re Cohen's wages and forensic accounting services (DX101) | | FRE 802; 402; 403 (improper listing; subject to Motion to Exclude) |

| <u>TX</u> | <u>Description</u> | <u>Bates Nos.</u> | <u>Objections</u> |
|---|---|---|---|
| 63. | Web page titled "Staff Directory" with profile on Michael Alford (DX102) | | FRE 402 if Motion to Exclude is granted |
| 64. | Web page with profile on Desiree Reed-Francois (DX103) | | FRE 402 if Motion to Exclude is granted |
| 65. | Wikipedia page re Desiree Reed-Francois (DX104) | | FRE 402 if Motion to Exclude is granted |
| 66. | Email thread re Desiree Reed-Francois and forensic accounting docs (DX105) | | FRE 402 if Motion to Exclude is granted |
| 67. | Document titled "Executive Summary" re Multiple-Year Employment Contract for ASU Athletics Director (dated June 19-21, 2024) (DX106) | | FRE 402 if Motion to Exclude is granted |
| 68. | David and Kathy Cohen's tax statements since 2019 (DX107) | | |
| 69. | David Weiner's chart showing historical interest rates, CPI, and ECI (DX108) | | FRE 402 if Motion to Exclude is granted |
| 70. | David Weiner's invoices for services to PVF (DX109) | | |
| 71. | Jamie Winkler's Expert File and Deposition Exhibits (pending) | | Objections reserved |
| 72. | Letter to David Cohen from PAC-12 Conference Commissioner dated January 17, 2018 (DX004) | | |
| 73. | Letter to David Cohen re 2017 bonus and pay raise (DX012) | ABOR.COHEN000025 | |
| 74. | Notes from Jean Boyd re David Cohen asking to raise an issue/concern about a donor with Boyd (Boyd DX01) | | |
| 75. | Notice (and Amended Notice) of Deposition of Bobby Hurley (DX027-29) | | FRE 402; 403 |
| 76. | Notes re Hurley, Anderson, Cohen, Wear, and "Cohen Allegations" (DX030) | ABOR.COHEN002322-2326 | FRE 802; 403 (subject of MIL) |
| 77. | Notes re Ray Anderson (DX031) | ABOR.COHEN002132-2145 | FRE 802; 403 (subject of MIL) |
| 78. | Notes re Scott Nelson (DX025) | | FRE 802; 403 (subject of MIL) |
| 79. | Amended Notice of Deposition of Scott Nelson (DX024) | | FRE 402; 403 |
| 80. | Text threads including David Cohen and Scott Nelson (DX026) | | FRE 802; 402; 403; 106 |
| 81. | Amended Notice of Deposition of Rick Shangraw (DX019) | | FRE 402; 403 |
| 82. | Email from Armstrong Teasdale to Scott Nelson re interview (DX020) | ABOR.COHEN_107-110 | |

4

| **TX** | **Description** | **Bates Nos.** | **Objections** |
|---|---|---|---|
| 83. | Notes re Rick Shangraw (DX022) | | FRE 802; 403 (subject of MIL) |
| 84. | Text threads including David Cohen and Rick Shangraw (DX023) | | FRE 802 |
| 85. | Plaintiff's Responses to ABOR's FROGs (Set One and Two) (DX054-55) | | |
| 86. | Docs Produced by Healthcare Realty Trust Incorporated (DX059) | | |
| 87. | Tax Return for Kathy and David Cohen (2021) (DX061) | | |
| 88. | Text thread with David Cohen and Bart Wear (DX065) | COHEN_000361-384 | |
| 89. | Text thread with David Cohen and Jay Heiler (DX071) | COHEN_002655-56 | |
| 90. | ASU Women's Swimming and Diving Schedule for 2017-18 (DX073) | | |
| 91. | Article re "Ex-ASU employee" (DX077) | | FRE 802 |
| 92. | Tweet from Pete Thamel re civil lawsuit filed by David Cohen (DX079) | | FRE 802 |
| 93. | LinkedIn Profile for David Cohen (DX053) | | |
| 94. | ASU Academic Affairs Manual re Prohibition Against Discrimination, Harassment, and Retaliation (DX093-94) | | |
| 95. | Notice of Deposition of Michael Crow (Crow DX01) | | FRE 402; 403 |
| 96. | Hurley, Crow, and Anderson email thread re "This is how we operate?" (Crow DX02) | | FRE 402; 403 |
| 97. | Facebook post by Ron Buckley with images of Linda and Bart Wear in attendance at Michigan State v. ASU football game | COHEN_005905 | FRCP 26, FRE 402; 901 |
| 98. | Photograph from Facebook post featuring Linda Wear in attendance at Michigan State v. ASU football game | COHEN_005906 | FRCP 26, FRE 402; 901 |
| 99. | Photograph from Facebook post featuring Linda and Bart Wear in attendance at Michigan State v. ASU football game | COHEN_005907 | FRCP 26, FRE 402; 901 |
| 100. | Text messages between Jean Boyd and David Cohen re Cohen "leadership" | COHEN_002873-2874 | FRE 802 |

**ABOR Potential Trial Exhibits**

| TX | Description | Bates Nos. | Objections |
|---|---|---|---|
| 140. | DX003 Cohen financial documents re Vivid Seats (Redacted) | ABOR.COHEN002016-21[1] | FRE 402, 403, 404, 611, 801, 802, 901, 902 |
| 141. | DX038 2018.01.26 Sandy Hatfield Clubb's Intake Meeting w Ray Anderson Notes | ABOR.COHEN003752* | FRE 402, 403, 611, 701, 702, 801, 802, 901 |
| 142. | DX040 Clubb's Senior Management Team Meeting Schedule Jan-Feb | ABOR.COHEN003758* | FRE 402, 403, 611, 701, 702, 801, 802, 901 |
| 143. | DX041 Clubb's Summary Results from Individual Meetings with Senior Management Team Members | ABOR.COHEN003774-76* | FRE 402, 403, 611, 701, 702, 801, 802, 901 |
| 144. | DX042 Answers to questions 8 & 9 of Clubb's survey | ABOR.COHEN003759* | FRE 402, 403, 611, 701, 702, 801, 802, 901 |
| 145. | DX043 Clubb's 2018.02.07 Notes re Dave Cohen | ABOR.COHEN003829* | FRE 402, 403, 611, 701, 702, 801, 802, 901 |
| 146. | DX044 Clubb's Senior Management Team Culture Assessment Summary Report | ABOR.COHEN003770-72* | FRE 402, 403, 611, 701, 702, 801, 802, 901 |
| 147. | DX047 Memo from Clubb to Anderson re Senior Management Team Culture Assessment Summary Report | ABOR.COHEN003754-59* | FRE 402, 403, 611, 701, 702, 801, 802, 901 |
| 148. | DX048 2018.04.02 Memo to Sun Devil Senior Management Team re Senior Management Team Culture Assessment Summary Report | ABOR.COHEN003760-72* | FRE 402, 403, 611, 701, 702, 801, 802, 901 |
| 149. | Cohen responses to Clubb's questionnaire | ABOR.COHEN001163* | FRE 402, 403, 611, 701, 702, 801, 802, 901 |
| 150. | DX056 2014.05.28 Offer Letter to Dave Cohen from ASU | ABOR.COHEN000019-20* | |
| 151. | DX060 2022.04.25 Decree of Dissolution David and Kathryn Cohen | | FRE 402, 403, 611 |
| 152. | Parker Executive Search LLC Response to Subpoena | PARKER000001-69 | |
| 153. | DX062 Text Messages between Cohen and Brad Chandler | COHEN_000721 | FRE 801, 802 |
| 154. | DX063 Text Messages between Cohen and Brad Chandler | COHEN_000725 | FRE 801, 802 |
| 155. | DX068 2019.06.12 Email from Cohen to Anderson re Cohen Self Evaluation | ABOR.COHEN001270-73* | FRE 402, 403 |
| 156. | DX069 2019.11.05 AT Memo re Cohen Investigation | ABOR.COHEN001069-1122 CONF | FRE 403, 611, 701, 702, 801, 802, 901 |
| 157. | DX070 2019.06.13 Cohen self-performance evaluation | ABOR.COHEN001141-42* | FRE 801, 802 |

---

[1] De-designated as Confidential.

| **TX** | **Description** | **Bates Nos.** | **Objections** |
|---|---|---|---|
| 158. | 2019.03.03-2019.07.27 Text Messages between Cohen and Anderson | COHEN_004859-65 | FRE 801, 802 |
| 159. | DX075 2018.01.19 Text Messages between Cohen and Tracy Smith | COHEN_005897-904 | FRE 801, 802 |
| 160. | DX076 2019.09.07 Text Messages between Cohen and Rashon Burno | COHEN_004688-89 | FRE 801, 802 |
| 161. | DX078 2022.02.17 Text Messages between Cohen and Rashon Burno | COHEN_004809 | FRE 402, 801, 802 |
| 162. | 2018.10.01 Text Messages between Cohen and Frank Ferrara | COHEN_001603-1744 | FRE 402, 403, 611, 801, 802 |
| 163. | 2016.02.08 Email from Turnkey Search to Cohen re Vivid Seats Board of Advisors, 04/11/2016 Engagement Letter and Non-Disclosure Agreement | ABOR.COHEN001027-32* | FRE 402, 403, 404, 405, 611, 801, 802 |
| 164. | DX084 Salcido SDA Notes | ABOR.COHEN001359-60* | FRE 801, 802, 901 |
| 165. | DX086 2019.08.13 Text Messages between Cohen and Salcido | No Bates nos. | FRE 801, 802 |
| 166. | DX089 2019.08.14 Text Messages between Cohen and Salcido | No Bates nos. | FRE 801, 802 |
| 167. | DX090 2019.08.20 Text Messages between Cohen and Salcido | No Bates nos. | FRE 801, 802 |
| 168. | ASU org charts for 01/19, 02/19, 07/19 and c. 08/19 | ABOR.COHEN001096-1101 ABOR.COHEN000311-12* | FRE 402, 901 |
| 169. | 12/11/2019 Demarchi letter to Perez | ABOR.COHEN003083-88 | FRE 403, 611, 801, 802, 911 |
| 170. | 11/14/2024 MCR Offer Letter to Cohen | EXPERT_DW_1376 | |
| 171. | 11/20/2019 Kazan letter to Demarchi | ABOR.COHEN003702-4 | FRE 403, 611, 801, 802, 901 |
| 172. | ASU Football and Men's Basketball Ticketing 2018-2019 | ABOR.COHEN001107* | FRE 801, 802, 901 |
| 173. | ASU Football and Men's Basketball Ticketing 2014-2019 | ABOR.COHEN000988* | FRE 801, 802, 901 |
| 174. | Text messages between Cohen and Hurley | COHEN_000649-650 | FRE 801, 802 |
| 175. | ASU Title IX PPT presentation | ABOR.COHN002502-19 | FRE 403, 611, 801, 802, 901 |
| 176. | Title IX Education & Training Report 2015-2016 | ABOR.COHN002572-74 | FRE 402, 901 |
| 177. | ASU Title IX SDA Training PPT presentation – Office of Equity & Inclusion 2017 | ABOR.COHN002575-2619 | FRE 403, 611, 801, 802, 901 |
| 178. | Title IX Education & Training Report 2017 | ABOR.COHN002654-58 | FRE 402, 901 |
| 179. | 02/18/2016 Email exchange between Cohen and AJ Machosky Re: PAC-12 | ABOR.COHN002979-81 | FRE 402, 403, 611, 801, 802, 901 |

| TX | Description | Bates Nos. | Objections |
|---|---|---|---|
| 180. | Cohen Detail of 2016 Transactions | ABOR.COHN002994 | FRE 402, 403, 611, 801, 802, 901 |
| 181. | 03/11/2019 Cohen email re: Pac-12 Tourney – Seats Behind the Team Bench | ABOR.CHEN001171* | FRE 402, 403, 611 |
| 182. | 03/25/2019 Tudor email to Cohen and Wear RE: payment for zylan flight | ABOR.CHEN001174-75* | FRE 402, 403, 611, 801, 802, 901 |
| 183. | 05/02/2019 Cohen email to Tudor re 2018-2019 Actual with 2019-20 Revenue Projections | ABOR.COHEN001255-56* | FRE 402, 403, 611 |
| 184. | 12/12/2019 Anderson letter to Cohen regarding his termination | ABOR.COHEN003089-95 | |
| 185. | 11/20/2019 Wear email to Anderson attaching Kazan letter | ABOR.COHEN003701-4 | FRE 402, 403, 611, 801, 802, 901 |
| 186. | 04/19/2019 Clubb email to Cohen RE:  Predictive Index – Needs your response | ABOR.COHEN003233-35 ABOR.COHEN003951-52 | FRE 402, 403, 611, 801, 802, 901 |
| 187. | 12/06/2017 NAU Memorandum of Understanding Offer | EXPERT_DW_0180-81 CONF | |
| 188. | Healthcare Realty Trust Retirement Savings Statement for Cohen 01/01/2023-07/24/2023 | EXPERT_DW-0422-24 CONF | FRE 402, 403, 611 |
| 189. | Hammes 12/01/2023 offer letter | EXPERT_DW_0470-72 CONF | |
| 190. | Hammes Realty Advisors LLC Earnings Statement for Cohen for 04/21/2024-05/04/2024 | EXPERT_DW_0200 CONF | |
| 191. | Healthcare Trust of America 2020 1099 to Cohen | EXPERT_DW_0433 CONF | |
| 192. | Cohen LinkedIn profile as of 09.2025 | ABOR.COHEN003975-81 | FRE 801, 802, 901 |
| 193. | Information regarding MCR Companies | ABOR.COHEN003982-96 | FRE 801, 802, 901 |
| 194. | 2017 Cohen tax returns | COHEN_000172-96 CONF | FRE 403, 611 |
| 195. | 2018 Cohen tax returns | COHEN_000197-223 CONF | FRE 403, 611 |
| 196. | 2019 Cohen tax returns | COHEN_000224-259 CONF | FRE 403, 611 |
| 197. | 2020 Cohen tax returns | COHEN_000260-301 CONF | FRE 403, 611 |
| 198. | DX061 2021 Cohen tax returns | COHEN_000302-353 CONF | FRE 403, 611 |
| 199. | 2022 Cohen tax returns | NOT YET PRODUCED BY PLAINTIFF | FRE 403, 611 |
| 200. | 2023 Cohen tax returns | NOT YET PRODUCED BY PLAINTIFF | FRE 403, 611 |
| 201. | 2024 Cohen tax returns | EXPERT_DW_1341-74 | FRE 403, 611 |

| TX | Description | Bates Nos. | Objections |
|---|---|---|---|
| 202. | Cohen Paystub KBT Management (MCR) 03/16/2025-03/31/2025 | EXPERT_DW_1375 | |
| 203. | 03/07/2019 Cohen email to recipients including Wear re Pac 12 tourney ticketing | ABOR.COHEN001112* | FRE 402 |
| 204. | 11/20/2019 Wear email to Anderson attaching Kazan letter | ABOR.COHEN003707 | FRE 402, 801, 802, 901 |
| 205. | 12/09/2019 Kazan LT Demarchi | ABOR.COHEN003069-70 | |
| 206. | Final Determination | ABOR.COHEN003075-76* | FRE 402, 403, 611, 801, 802, 901 |
| 207. | 12/10/2019 O'Brien LT the Cohens enclosing Final Determination | ABOR.COHEN003071* | FRE 402, 403, 611, 801, 802, 901 |
| 208. | 12/10/2019 O'Brien LT L Hurley enclosing Final Determination | ABOR.COHEN003072-74 CONF | FRE 402, 403, 611, 801, 802, 901 |
| 209. | 12/10/2019 O'Brien LT Wear enclosing Final Determination | ABOR.COHEN003077-79* | FRE 402, 403, 611, 801, 802, 901 |
| 210. | 12/10/2019 O'Brien LT L Wood enclosing Final Determination | ABOR.COHEN003080-82 CONF | FRE 402, 403, 611, 801, 802, 901 |
| 211. | 12/11/2019 O'Brien email to Anderson enclosing Final Determination | ABOR.COHEN003726-28 | FRE 402, 403, 611, 801, 802, 901 |
| 212. | Text messages between Cohen, Anderson and others | COHEN_004823-32 | FRE 801, 802 |
| 213. | Text messages between Cohen and Hurley | COHEN_000638-57 | FRE 801, 802 |

### ABOR EXHIBITS ALSO LISTED BY PLAINTIFF

| | | | |
|---|---|---|---|
| 140. | DX001 Boyd notes 03-14 to 06-19 | ABOR.COHEN001148 | FRE 801, 802 |
| 141. | DX002 2014.06.10 Offer letter from ASU to Cohen | ABOR.COHEN000006* | |
| 142. | DX004 2018.01.17 PAC-12 Letter to Cohen re complaints received | ABOR.COHEN001034-35* | FRE 402, 801, 802, 901 |
| 143. | DX006 2015.06.23 Email from Riggs to Cohen re Bonus | ABOR.COHEN000021* | |
| 144. | DX007 2016.06.22 Letter to Cohen re 2015-2016 Bonus | ABOR.COHEN000022* | |
| 145. | DX008 2016.07.20 Email from Riggs to Cohen re pay increase | ABOR.COHEN000007* | |
| 146. | Documents and notes of Sandy Hatfield Clubb | ABOR.COHEN001161-67* | FRE 403, 611, 801, 802, 901 |
| 147. | DX011 2018.06.20 Self-Performance Evaluation Cohen | ABOR.COHEN000027-28* | FRE 801, 802, 901 |
| 148. | DX012 2018.06.25 Letter to Cohen re 2017-2018 Bonus | ABOR.COHEN000025* | |
| 149. | DX013 2018.08.14 Email from Riggs to Cohen re salary increase | ABOR.COHEN000026* | |
| 150. | DX014 2017.08.10 Email from Schramm to Riggs re Cohen bonus | ABOR.COHEN000011* | |

| 151. | DX045 2018.05.29 Memo from Clubb to Anderson re Senior Management Team Culture Improvement Select Staff Meetings | ABOR.COHEN003773 CONF | FRE 403, 611, 701, 702, 801, 802, 901 |
|---|---|---|---|
| 152. | DX053 LinkedIn Resume – Dave Cohen | | FRE 402, 403, 611, 901 |
| 153. | DX054 2022.11.21 Plaintiff's Response to ABOR First Set of Interrogatories | | FRE 403, 611, 901 |
| 154. | DX055 2024.03.18 Plaintiff's Response to ABOR Second Set of Interrogatories | | FRE 403, 611, 901 |
| 155. | DX058 2017.07.31 Bonus Letter to Dave Cohen 2016-2017 | ABOR.COHEN001134* | |
| 156. | DX059 2023.03.23 Declaration of Authenticity and documents produced by HRTI | HRTI000001-32 | FRE 204, 801, 802, 901 |
| 157. | DX065 2024.04.03 Text Messages between Cohen and Bart Wear | Cohen_000361-384 | FRE 801, 802 |
| 158. | DX067 2019.03.14 Text messages between Cohen and Scott Nelson | COHEN_005704 | FRE 801, 802 |
| 159. | DX071 2019.06 Text Messages between Cohen and Jay Heiler | COHEN_002655-56 | FRE 801, 802 |
| 160. | DX073 2017-2018 Women's Swimming and Diving Schedule | | FRE 402, 901 |
| 161. | DX093 2021.11.01 ACD 401: Prohibition Against Discrimination, Harassment, and Retaliation | No Bates nos. | |
| 162. | DX094 2021.11.10 P20: Prohibition against discrimination, harassment, and retaliation: Report and investigation procedure | No Bates nos. | |
| 163. | DX102 Michael Alford -Vice President and Director – Staff Directory – Florida State | | FRE 801, 802, 901 |
| 164. | DX103 Desiree Reed-Francois-Vice President and Director of Athletics- UofA | | |
| 165. | DX104 Desiree Reed-Francois - Wikipedia | | FRE 801, 802, 901 |
| 166. | DX105 05/16/2024 email from Ruiz to Forensic Accounting Documents Service Account | DW000198-199 CONF | |
| 167. | DX106 06/19-21/2024 Board of Regents Meeting agenda item to approve a Multiple Year Employment Contract for Graham Rossini as Athletics Director at ASU | DW000465-9 CONF | |
| 168. | DX107 Cohen W-2s for 2019-2023 | DW000461-64 CONF | |
| 169. | DX108 JS Held Historical Interest Rates, CPI and ECI and salary information for ASU and UofA | DW001063-75 | |

| 170. | DX109 Weiner invoices | | |
|------|----------------------|--------|--------|
| 171. | 01/05/2017 Email exchange between Cohen and AJ Machosky Re: Quote | ABOR.COHN002984 | FRE 402, 403, 404, 405, 611, 801, 802 |
| 172. | 07/01/2015 PAC-12 Sales, LLC/Vivid Seats Sponsorship Agreement | ABOR.COHEN002925-39* | FRE 402, 403, 404, 405, 611, 801, 802, 901 |
| 173. | David Cohen's paystubs showing annual bonuses for 2017, 2018, and 2019 | ABOR.COHEN000009; ABOR.COHEN000023; ABOR.COHEN000029 | |
| 174. | 07/28/2016 Sponsorship Agreement Amendment | ABOR.COHEN002940-41* | FRE 402, 403, 611, 801, 802, 901 |

11

**EXHIBIT B**

**EXHIBIT B**

**Deposition Designations**

| Plaintiff's Designations | Objections |
|---|---|
|  |  |
| **Jean Boyd** |  |
| 4:18-25 |  |
| 10:1-6 |  |
| 12:6-7 |  |
| 13:3-10 |  |
| 14:11-25 |  |
| 17:4-11 |  |
| 18:15-25 |  |
| 19:11-15 |  |
| 21:12-19 |  |
| 25:7-26:18 |  |
| 27:12-28:3 |  |
| 30:22-31:4 |  |
| 32:18-33:3 |  |
| 34:7-9 |  |
| 38:20-39:12 |  |
| 43:4-46:9 |  |
| 47:6-53:1 |  |
| 53:13-55:14 |  |
| 58:19-59:11 |  |
| 61:20-22 |  |
| 62:9-63:6 |  |
| 64:7-65:7 |  |
| 67:18-70:19 |  |
| 72:15-21 |  |
| 75:20-25 |  |
| 76:13-77:25 |  |
| 80:23-82:14 |  |
| 84:6-86:3 |  |
|  |  |
| **James Heiler** |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Revised 11.06.25

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Rick Shangraw** | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

| **Defendant's Designations** | **Objections** |
|---|---|
| | |
| **Jean Boyd** | |
| 12:13-14 | |
| 14:21-15:14 | |
| 16:1-17:6 | |
| 17:19-23 | |
| 18:1-19 | |
| 19:16-23 | |
| 20:17-21 | |
| 21:12-17 | |
| 21:20-22:3 | |
| 22:20-23:6 | |
| 27:14-21 | |
| 28:4-10- | |
| 31:9-32:23 | |
| 34:11-35:11 | |
| 39:18-40:8 | |
| 40:12-22 | |
| 42:25-46:2 | |

2

| | |
|---|---|
| 45:7-46:2 | |
| 46:14-24 | |
| 47:6-48:5 | |
| 48:9-16 | |
| 51:17-52:15 | |
| 52:21-53:8 | |
| 55:16-24 | |
| 56:18-57:12 | |
| 57:21-25 | |
| 60:8-64:2 | |
| 64:7-65:7 | |
| 66:2-4 | |
| 66:21-67:9 | |
| 67:18-68:8 | |
| 68:16-19 | |
| 69:1-23 | |
| 70:20-71:4 | |
| 72:22-73:8 | |
| 74:13-21 | |
| 74:25-75:19 | |
| 77:5-20 | |
| 78:2-8 | |
| 80:23-81:18 | |
| | |
| **James Heiler** | |
| 17:6-9 | |
| 17:13-18 | |
| 32:7-24 | |
| 60:22-61:5 | |
| 62:2-10 | |
| 62:13-63:13 | |
| 64:16-65:3 | |
| 66:1-67:22 | |
| 68:7-69:3 | |
| 69:14-22 | |
| | |
| | |
| **Rick Shangraw** | |
| 24:5-10 | |
| 26:7-9 | |
| 26:24-27:3 | |
| 27:6-28:4 | |
| 30:7-16 | |
| 38:4-9 | |
| 44:24-47:1 | |

Revised 11.06.25

| | |
|---|---|
| 38:21-39:9 | |
| 39:23-40:6 | |
| 40:11-15 | |
| 40:19-20 | |
| 44:24-47:1 | |
| 115:24-116:2 | |
| 119:17-19 | |
| 122:12-16 | |

Revised 11.06.25

**EXHIBIT C**

**Plaintiff's Proposed Findings of Fact and Conclusions of Law – Equitable Remedies**

Plaintiff contends he is entitled to the equitable remedies of "backpay" and "front pay" and has requested an advisory jury on the issues. The issues of fact and law that are applicable, however, depend upon this Court's resolution of Defendant's Motion to Exclude Plaintiff's Damages Expert (Doc. 117).

**EXHIBIT D**

**Defendant's Proposed Findings of Fact and Conclusions of Law – Equitable Remedies**

[To be entered if, but only if, the jury finds retaliatory termination.]

<u>Findings of Fact</u>

1.    Plaintiff seeks the equitable remedies of "backpay" and "front pay."

2.    At the time of his discharge, Plaintiff's base salary at Arizona State University was $191,228 and his average bonus for the prior three years was $86,000.  Plaintiff was placed on administrative leave shortly after Ray Anderson relieved Plaintiff of his duties on August 15, 2019.  Plaintiff was paid his salary during the period of August 15, 2019 until his formal termination on December 14, 2019.

3.    In January 2020, within a month after his formal discharge, Plaintiff found replacement employment with Healthcare Trust of America at a yearly rate of compensation of $120,000 and within three months after his discharge, Plaintiff's income increased to a yearly rate of compensation of $175,000 with a bonus of up to $87,500.

4.    Plaintiff's total income in 2021 according to his 2021 W2 was $196,221.  In 2022, Healthcare Trust of America was acquired by Healthcare Realty Trust and Plaintiff's compensation structure was modified to include commissions.  Plaintiff's total compensation in 2022 according to his 2022 W-2 was $477,614.  Plaintiff's total income according to his 2023 W-2 was $455,901.

5.    In January 2024, Plaintiff voluntarily chose to take another job, for reasons unrelated to his termination at Arizona State University, at an annual salary of $185,000 plus bonus up to $101,750. In 2024, Plaintiff lost his job for reasons unrelated to his termination from Arizona State University.  In November 2024, Plaintiff entered into a contract with his current employer with an annualized base salary of at least $185,000, with incentives to increase the base salary to $225,000, plus bonus eligibility.

6.    Between August 15, 2019 and Plaintiff's formal termination on December 14, 2019, evidence was discovered by Arizona State University that would have resulted in Plaintiff's termination. Specifically, that Plaintiff had engaged in an improper transaction with Vivid Seats, a secondary ticket broker.

<u>Conclusions of Law</u>

1.    Backpay is the amount of compensation an employee would have been paid by the defendant employer through the date of trial, had he not been wrongfully discharged.  Front pay is the present value of compensation a wrongfully discharged employee was reasonably certain to receive from a defendant employer, after the date of trial, had his employment continued.  *See, e.g., Teutscher v. Woodson*, 835 F.3d 936 (9th Cir. 2016).

2.      A wrongfully discharged employee must make reasonable efforts to mitigate an employer's damages by seeking suitable alternative employment. *Id.* at 947. Backpay and front pay must be reduced by the amounts the discharged employee could, through reasonable diligence, earn using mitigation efforts. *Id.* at 947-48.

3.      After Plaintiff's termination, he in fact found suitable replacement employment, for which he was compensated, through the date of trial, at a rate comparable to his compensation at Arizona State University and, within two years, significantly more than he would have earned had he continued as an employee at Arizona State University. Upon demonstrating the ability to replace his income, Plaintiff's right to recover front and back pay ends. *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 954 (7th Cir. 1998) ("the court terminates the inquiry at the point at which the plaintiff finds employment comparable or superior to her old job" at which point the damages subject to equitable remedies "are mitigated down to zero"). Accordingly, Plaintiff is not entitled to backpay or front pay based upon the facts as found by the Court.

4.      Moreover, and alternatively, equitable remedies are always discretionary with the Court. *See Lutz v. Glendale Union High School*, 403 F.3d 1061, 1070 (9th Cir. 2005). In my discretion, I would not award backpay or front pay in this case.

5.      Additionally, and alternatively, I find that the evidence discovered by Arizona State University that would have resulted in Plaintiff's termination prohibits an award of any equitable relief, because it was discovered and would have resulted in termination while Plaintiff was still being paid. See *McKennon v. Nashville Banner Pub. Co*., 513 352, 362 (1995).