**PAPETTI SAMUELS WEISS MCKIRGAN LLP**
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

**Robert McKirgan** (State Bar No. 011636)
Direct Dial: 480.800.3533
Email: rmckirgan@PSWMlaw.com

**Lawrence A. Kasten** (State Bar No. 020204)
Direct Dial: 480.908.1855
Email: lkasten@PSWMlaw.com

**Jennifer Lee-Cota** (State Bar No. 033190)
Direct Dial: 480.800.3528
Email: jleecota@PSWMlaw.com

**Heather Robles** (State Bar No. 036790)
Direct Dial: 480.800.3522
Email: hrobles@PSWMlaw.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| David Cohen,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Arizona Board of Regents; and Raymond Anderson, an individual,<br><br>　　　　　Defendants. | Case No. 2:21-cv-01178-PHX-GMS<br><br>**ABOR'S BENCH MEMO RE PRECLUSION OF DAMAGES CLAIMS AND EQUITABLE REMEDIES** |

The scope of recoverable damages in this case is defined by the distinct remedial schemes of Title VII and Title IX. Following Plaintiff's stipulation to dismiss emotional distress claims and the Court's exclusion of the "Athletic Director" expert opinions, no triable damages issue remains for the jury, as Plaintiff has acknowledged. The Court should also find that Plaintiff is ineligible for the equitable remedies of back and front pay because equity "abhors a windfall," and Ninth Circuit law mandates that these remedies place the Plaintiff in the position he would have held – not a better one. Because Plaintiff voluntarily resigned from comparable employment that paid him significantly more than his ASU compensation, he has fully mitigated his damages. Any award of lost wages would constitute an impermissible windfall.

**I.　　EQUITABLE RELIEF (FRONT AND BACK PAY)**

Back and front pay are equitable remedies determined by the Court, not the jury.

*Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1012 (9th Cir. 2010); *Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1069 (9th Cir. 2005). Backpay and front pay are functional equivalents, not distinct remedies – the only difference is that the former is calculated from the date of termination until final judgment and the latter from final judgment until reinstatement or its equivalent. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 849 (2001) ("In the Title VII context, . . . 'backpay' occurring after the date of judgment is known as 'front pay.'").[1]

### A. Equity Abhors a Windfall: Mitigation and Replacement Income

The purpose of equitable relief is to make an injured plaintiff "whole," not to bestow a windfall. *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1157 (9th Cir. 1999) ("Because of the potential for windfall, [front pay's] use must be tempered.") (quoting *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1424 (4th Cir. 1991)); *see also Teutscher v. Woodson*, 835 F.3d 936, 954 (9th Cir. 2016) (prohibiting double recovery to avoid windfalls).

#### 1. Superior Replacement Income Cuts Off Liability

To be eligible for back or front pay, a plaintiff must mitigate his damages "by seeking alternative employment with 'reasonable diligence,'" and any award must be reduced by the plaintiff's actual earnings during the period covered by the award, or (if he failed to mitigate) by the amount he *would have earned*. *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1020 (9th Cir. 2000), *as amended on denial of reh'g* (Nov. 2, 2000); *see also Teutscher*, 835 F.3d at 952 n.12 (a plaintiff's demonstrated ability to mitigate by finding a job with the same salary as the one lost precludes both front pay and backpay as of the time such a job was available).

Here, Plaintiff secured replacement employment in 2022 earning (as stipulated by the Parties) $477,614 annually – substantially more than his former ASU salary of $191,000 and a discretionary bonus of no more than $100,000. In 2023, Plaintiff earned

---

[1] Front and backpay are also among the equitable remedies a court may award under Title IX. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 76 (1992).

2

(as stipulated by the Parties) $455,000; again, significantly more than his prior ASU income. Plaintiff's earnings surplus fully offsets any theoretical loss. To award back or front pay on top of these superior earnings would violate the equitable principle against windfalls.

Plaintiff has indicated an intent to argue that his earnings from jobs outside of his preferred field of interest should not be used to offset backpay, citing *Ford Motor Co. v. EEOC*, 458 U.S. 219 (1982), and *EEOC v. Pape Lift, Inc.*, 115 F.3d 676 (9th Cir. 1997). Neither of these cases support this argument, which is in direct contradiction to the plain language of the statute requiring backpay to be reduced "by interim ***earnings*** or ***amounts earnable*** with reasonable diligence." *See* 42 U.S.C. § 2000e-5(g)(1) (emphasis added). Both cases instead support the well-established principle that a plaintiff "need not go into another line of work, accept a demotion, or take a demeaning position" to be deemed to have acted reasonably in mitigating his damages. *Ford Motor Co.*, 458 U.S. at 230. But the question before the Court is not whether Plaintiff acted reasonably in accepting interim employment outside the college athletics field, but rather at what point his "interim earnings" or "amounts earnable with reasonable diligence" exceeded his previous salary. Plaintiff's intended argument also ignores the hornbook law that damages caused by unlawful termination are mitigated to zero "at the point at which the plaintiff finds employment comparable to ***or superior to*** her old job." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 954 (7th Cir. 1998) (emphasis added).

To the extent that Plaintiff intends to argue that the roles he has held since leaving ASU are not the sort of "comparable" or "suitable" employment that a plaintiff would be required to accept or else forfeit the right to equitable relief, this argument is unavailing and contradicted by substantial case law, including a decision by this Court. In *Murrell-Travland v. On Q Fin., Inc.*, this Court properly ended the period of backpay (years before final judgment) on the date she turned down an offer for a job that would have paid a higher salary than the one from which she was terminated, even though the replacement job would have involved childcare complications and "required a different

3

skill-set" than her previous role. 2013 WL 3930133, at *1-2 (D. Ariz. July 30, 2013). Other courts have come to the same conclusion. *See*, *e.g.*, *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 771 (7th Cir. 2006) (affirming denial of front pay for patent attorney whose "vast experience plus an educational background that includes a master's degree in biomedical engineering" should ensure a "range of opportunities" for employment in various fields); *Dillon v. Coles*, 746 F.2d 998, 1006 (3d Cir. 1984) (affirming denial of front pay for plaintiff who was qualified to teach or run a beauty shop); *Barbour v. Medlantic Mgmt. Corp.*, 952 F. Supp. 857, 866 (D.D.C.), *aff'd sub nom. Barbour v. Merrill*, 132 F.3d 1480 (D.C. Cir. 1997) (limiting front pay in light of plaintiff's substantial "qualifications and practical experience"). Allowing Plaintiff to ignore his actual income earned in calculating his remedy would result in a windfall to Plaintiff; a windfall that equity abhors.

### 2.     Voluntary Resignation Constitutes a Failure to Mitigate and Breaks the Causal Chain

The Ninth Circuit holds that a voluntary decision to quit substantially equivalent employment constitutes a "willful loss of earnings" that terminates the employer's liability. *Sangster v. United Air Lines, Inc.*, 633 F.2d 864, 868 (9th Cir. 1980). This Court recently applied this rule to bar damages where a plaintiff failed to mitigate her damages by voluntarily resigning from a substantially equivalent position "as a matter of personal preference." *Rightsell v. Concentric Healthcare Sols. LLC*, 2024 WL 1366929, at *1 (D. Ariz. Apr. 1, 2024); *see also*, *e.g.*, *Barbour*, 952 F. Supp. at 864 (voluntary resignation bars further recovery); *Reiner v. Family Ford, Inc.*, 146 F. Supp. 2d 1279, 1288 (M.D. Fla. 2001) (voluntarily quitting two interim jobs constituted failure to mitigate). By voluntarily leaving his position at the Healthcare Trust, Plaintiff – not ABOR – became the proximate cause of any subsequent periods of unemployment. To award damages for this self-imposed loss would violate the fundamental requirement that Title VII relief must be traceable to the defendant's unlawful conduct, not the plaintiff's independent choices. *See Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269,

1278 (4th Cir. 1985) (Title VII's backpay provisions "are compensatory and remedial in nature, not punitive").

### B. Front Pay Cannot Extend to Worklife Expectancy

Absent extraordinary circumstances, front pay is "intended to be temporary in nature" and does not allow a plaintiff to "sit idly by and be compensated for doing nothing." *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1347 (9th Cir. 1987) (quoting *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir. 1984). Courts routinely reject front pay awards extending to retirement age as "unduly speculative," particularly when applied to high-level professionals with a demonstrated ability to advance their own careers. *See*, *e.g.*, *Mattenson*, 438 F.3d at 771 ("Mattenson probably won't be able to find another job that pays him $240,000 a year. But he can't insist on Baxter's paying him that amount each year until he turns 65 (his intended retirement age) in order that he can play golf eight hours a day."); *Peyton v. DiMario*, 287 F.3d 1121, 1130 (D.C. Cir. 2002) (vacating 26-year award as a "tremendous windfall" for an employee who claimed she was qualified for a high-paying job). Because Plaintiff has already demonstrated his ability to earn superior income, extending front pay *at all*, let alone through his work-life expectancy, would constitute a windfall.

### C. After-acquired Evidence Bars Equitable Relief

Under *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 362 (1995), an employee is barred from obtaining front pay or reinstatement if the employer discovers evidence of wrongdoing that would have led to termination, and the period for backpay ends on the date the evidence was discovered. Here, ASU discovered Plaintiff's undisclosed transaction with a vendor while he was still on paid administrative leave. Because he was paid through the date of discovery, there is no unpaid backpay period to calculate, and *McKennon* bars any future relief.

## II. CONCLUSION

Plaintiff has already achieved a better result in the marketplace than he would have had at ASU. Because equity abhors a windfall, and because Plaintiff's own conduct

5

(both his voluntary resignation from the HealthCare Trust and the misconduct ASU discovered after his termination) cuts off liability, the Court should preclude any award of back or front pay.

Dated this 11th day of December, 2025.

PAPETTI SAMUELS WEISS MCKIRGAN LLP

/s/Robert McKirgan
Robert McKirgan
Lawrence A. Kasten
Jennifer Lee-Cota
Heather Robles

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 11th day of December, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael J. Pérez
Jeffrey R. Feasby
Evan C. Flores
Perez Vaughn & Feasby Inc.
600 B Street, Ste. 2100
San Diego, CA 92101

José de Jesús Rivera
Miller, Pitt, Feldman & McAnally P.C.
2800 N. Central Ave., Ste. 1400
Phoenix, AZ 85004
jrivera@mpfmlaw.com

*Attorneys for Plaintiff*

/s/Joye Allen